591 F.2d 1151
 79-1 USTC P 9284
 Irwin MAZO, Marvin I. Rosenzweig, Erwin A. Friedman and
Barney L. Sadler, Plaintiffs,
v.
UNITED STATES of America, Defendant-Appellee,
v.
Marvin I. ROSENZWEIG, Erwin A. Friedman, Barney L. Sadler,
William Lattimore, Norman W. Fries, George Moore,
and Irwin Mazo, Defendants-Appellants.
 No. 77-2104.
 United States Court of Appeals,
Fifth Circuit.
 March 23, 1979.
 
 Fred S. Clark, Savannah, Ga., for Norman Fries and William Lattimore.
 Morton G. Forbes, Savannah, Ga., for George Moore.
 Bruce A. Howe, Savannah, Ga., for defendants-appellants.
 Gilbert E. Andrews, Chief, Appellate Section, M. Carr Ferguson, Asst. Atty. Gen., Richard Farber, Mary L. Jennings, Attys., William A. Friedlander, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Georgia.
 Before GEWIN, GEE and RUBIN, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 An officer or employee of a corporation who is responsible for the collection of employment taxes from the pay due an employee may be assessed a penalty equal to the amount of the taxes if he willfully fails to account for and pay over the amount due to the United States. 26 U.S.C. § 6672. The government found such liability on the part of those parties who were simultaneously the officers, directors and stockholders of Savannah Inn & Country Club, Inc., and its general manager, George Moore. Although each of them protests that he had a title and position without genuine authority, each was, under the statute, a responsible person both at the time tax was withheld and at the later date when funds were available to pay it and were diverted to other purposes, and within the meaning of the statute the failure of each to perform his duty was willful; to paraphrase an aphorism of the late President Harry Truman, the corporate buck stopped with them. Accordingly, we affirm the judgment of the trial court granting the motion for summary judgment filed by the United States and denying the motion for summary judgment filed by the officers.
 
 I.
 
 2
 Under the withholding system set up in the Internal Revenue Code, 26 U.S.C.A § 3401 Et seq., employers have a duty to collect both income and FICA ("socialsecurity") taxes from their employees. These sums are commonly referred to as "trust funds" because the Code provides that they are deemed to be "a special fund (held) in trust for the United States." 26 U.S.C. § 7501. When net wages are paid to the employee, the taxes that were, or should have been, withheld are credited to the employee even if they are never remitted to the government; so the IRS has recourse only against the employer for their payment.
 
 
 3
 However, Section 6672 of the Internal Revenue Code imposes a penalty on any "person required to collect, truthfully account for, and pay over any tax" withheld who willfully fails to do so. The penalty is equal to the total amount of the tax not paid over, and is itself referred to as a "tax" in Section 6671. The term "person," as defined in Section 6671, includes "an officer or employee of a corporation . . . who as such officer (or) employee . . . is under a duty" to collect, account for, and pay over the withheld tax. This is known as a "responsible person." Thus, liability for a penalty is imposed only on (1) a responsible person (as defined in Section 6671), who has (2) willfully failed to perform a duty to collect, account, "and" pay over the tax.
 
 
 4
 The statute has recently been explained by the Supreme Court in Slodov v. United States, 1978, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251. That case involved an orthodontist who, having no prior business connection with three food vending businesses, bought their stock and acquired their control after the sellers represented that the corporation had sufficient cash to pay its accrued liability for withheld employee wage and Federal Insurance Contribution Act (FICA) taxes, which amounted to $250,000. As soon as the orthodontist took command, he found that the representations were untrue; the corporations had no liquid assets. After reporting these findings to the Internal Revenue Service (IRS), he used his personal funds to finance corporate operations and paid all the taxes that later became due.
 
 
 5
 The initial question presented was whether the orthodontist was a "responsible person." As a postulate for resolving it, the Court stated that there is no question that the statute applies "(w)hen the same individual or individuals who caused the delinquency in any tax quarter are also the 'responsible persons' at the time the Government's efforts to collect from the employer have failed . . . ". 436 U.S. at 245, 98 S.Ct. at 1784, 56 L.Ed.2d at 260-61.
 
 
 6
 The taxpayer's first argument was that, because the statute uses the conjunctive "and," it reaches only persons who have all three duties: " 'to collect, truthfully account for And pay over any tax imposed by this title'." (Emphasis supplied). This, the court concluded, was a misreading: a person is responsible if he has a duty to perform any one of these functions collecting, accounting or paying over; the penalty is not limited "to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question." 436 U.S. at 250, 98 S.Ct. at 1787, 56 L.Ed.2d at 263. The orthodontist was in authority when the corporation had a duty to pay over the taxes due; he might therefore be considered a "responsible person" if he himself had a duty at that time to apply available funds to payment of the taxes.
 
 
 7
 The Court next considered the scope of liability of an individual becoming a responsible person for the first time after withholding tax liability has accrued and the trust funds have been dissipated. It held that funds collected by the corporation after a change in corporate control are not impressed with a trust for taxes withheld during a prior regime unless those funds are directly traceable to dissipated trust funds; failure to use such later acquired funds to pay federal withholding taxes does not constitute a violation of the § 6672 requirement that the responsible person "pay over" withholding taxes. See 436 U.S. at 258, 98 S.Ct. at 1791, 56 L.Ed.2d at 269.
 
 
 8
 The trust § 7501 creates for funds withheld may in most circumstances be enforced. However, the liability of responsible persons generally is not limited to restoring actual cash diverted from the trust; it encompasses the duty to have initially or to collect funds to pay withholding taxes. Thus, if a corporation has only sufficient cash to pay net wages, and does so, there may literally be no funds to constitute the corpus of the trust, but the responsible persons are nevertheless liable for failure to collect withholding taxes; the United States may not be made an unwilling joint venturer in the corporate enterprise. Brown v. United States, 5 Cir. 1979, 591 F.2d 1136; Sorenson v. United States, 9 Cir. 1975, 521 F.2d 325; Pacific National Insurance Co. v. United States, 9 Cir. 1970, 422 F.2d 26, Cert. denied, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269. See also Frazier v. United States, 5 Cir. 1962, 304 F.2d 528.
 
 
 9
 It is in this light that we must read observations in Slodov that § 7501 and § 6672 do not "impress a trust on . . . after-acquired cash," 436 U.S. at 254, 98 S.Ct. at 1789, 56 L.Ed.2d at 266, or that § 6672 cannot "be construed as establishing a fiduciary obligation to pay over after-acquired cash unrelated to the withholding taxes." 436 U.S. at 255, 98 S.Ct. at 1789, 56 L.Ed.2d at 267. The orthodontist in Slodov was not subject to a § 6672 penalty because the funds he acquired after his accession to control were not subject to a trust, and his duty as a person assuming corporate control with respect to the accrued withholding tax liability was limited to paying any trust funds related to that liability and any other funds directly traceable to those trust funds that had been dissipated. Where there has been no change in control, however, responsible persons are subject to a duty to apply any available unencumbered funds to reduction of accrued withholding tax liability, whether or not those funds are deemed to be trust funds within the meaning of § 7501. See Maggy v. United States, 9 Cir. 1977, 560 F.2d 1372, 1376, and Teel v. United States, 9 Cir. 1976, 529 F.2d 903, 905. Although both Maggy and Teel stated that such funds are held in trust, this was unnecessary to the results reached in those cases. Furthermore, although those cases antedate Slodov, nothing in those opinions restrict their continued applicability. In fact, Slodov implicitly affirms their conclusions because the Court assumes at the outset that a penalty may be exacted from a person who was responsible both during the period withholding tax liability accrued and thereafter. 436 U.S. at 244-45, 98 S.Ct. at 1784, 56 L.Ed.2d at 260-61. The Court also specifically limited its holding to funds acquired after the responsible person's "accession to control."[1] 436 U.S. at 258-59, 98 S.Ct. at 1791, 56 L.Ed.2d at 269.
 
 
 10
 At no point does Slodov reach the need to define the meaning of the term "willfully" with respect to individuals who were responsible persons both before and after withholding tax liability accrued. The term "willfully" is defined by prior cases as meaning, in general, a voluntary, conscious, and intentional act, such as payment of other creditors in preference to the United States, although bad motive or evil intent need not be shown. Liddon v. United States, 5 Cir. 1971, 448 F.2d 509, 513, Cert. denied, 1972, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117; Monday v. United States, 7 Cir. 1970, 421 F.2d 1210, 1216, Cert. denied, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48; Hewitt v. United States, 5 Cir. 1967, 377 F.2d 921, 924. The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government, See Teel v. United States, Supra, and Monday v. United States, supra, 421 F.2d at 1215, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted. Kalb v. United States, 2 Cir. 1974, 505 F.2d 506, 511, Cert. denied, 1975, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471; United States v. Leuschner, 9 Cir. 1964, 336 F.2d 246, 248.
 
 
 11
 Although the Fifth Circuit recognizes that reasonable cause may excuse the failure to collect, account for, or pay over withholding taxes, See Newsome v. United States, 5 Cir. 1970, 431 F.2d 742, 746, the mere delegation of responsibility to another does not constitute reasonable cause. Moreover, once an assessment of penalty taxes is made and it is established that the taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. E. g., Anderson v. United States, 8 Cir. 1977, 561 F.2d 162, 165; Liddon v. United States, supra, 448 F.2d at 513-14.
 
 II.
 
 12
 Each of the appellants, save Moore, was an officer, director and stockholder of Savannah, a business corporation, at the time its employees' income and FICA taxes should have been withheld and paid. At the same time, Moore was Savannah's general manager and handled day-to-day operations. A Mr. Lavoie was employed as controller and prepared corporate checks, but he had no authority to sign or countersign those checks. Two signatures were required for checks drawn on the regular corporate account; this meant that the signatures of two directors or of Moore plus one director were requisite. The corporation also had a payroll and salvage account. Only one signature was necessary for checks drawn on that account, and Moore was usually the signatory.
 
 
 13
 During the first three quarters of 1969, ending September 30, income and FICA taxes were withheld when the corporate employees were paid, but the portion retained by Savannah was not paid to the government although, under the statute, it was "held in trust" for that purpose. On October 6, at the instance of an IRS agent, a meeting was held to discuss this liability. Each of the officers was present. Moore admits he knew of the arrearages in August, but each of the other officers contends that before the meeting he knew nothing of them. Lavoie, they assert, prepared all payroll checks and presented them for signature (although Lavoie had no authority to sign or countersign any check). Each assumed that Lavoie was paying over the withheld taxes. Following the October 6 meeting, Savannah paid the amount due for the first quarter of 1969, leaving unpaid the debts for the second quarter ($49,386.04) and third quarter ($29,333.67). The total of these sums is $78,719.71. On November 7, Moore was discharged. Savannah continued to operate until February 1970, when the holder of the first mortgage on its property foreclosed. It is now a dormant shell, fiscally, though not legally, bankrupt. From October 6 through the end of that month, there were total deposits to Savannah's checking account of about $96,000, but none of these funds was applied to the tax debts. During the period after October 6, each of the appellants except Sadler signed one or more corporate checks drawn to creditors for substantial amounts.
 
 
 14
 In May 1974, the IRS assessed $78,719.71 against some of the officers as penalties under § 6672. They paid $100 each toward the assessment and sued for refunds. The government counterclaimed for the balance owed and joined the remaining defendants. The material facts apparently being undisputed, the case was submitted on cross-motions for summary judgment, and the trial court granted the government's motion.
 
 III.
 
 15
 Each of the individuals assessed now asserts that summary judgment was inappropriate because there were disputed issues of material fact: their willfulness and their control over Savannah. Rule 56(c), F.R.Civ.P. With respect to disputed facts we must, of course, assume the version most favorable to the officers. See United States v. Diebold, Inc., 1962, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176; Poller v. Columbia Broadcasting System, Inc., 1962, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458; BAW Manufacturing Co. v. Slaks Fifth Avenue, Ltd., 5 Cir. 1977, 547 F.2d 928, 930. Therefore we must credit that, except for Moore, the individuals assessed had no knowledge that before the October 6 meeting any taxes were in arrears and that Moore knew of the default in August, but was informed that Lavoie would take care of it. We assume also that, although the directors together had complete control over corporate affairs, they did not exercise their prerogatives, leaving management to Moore.
 
 
 16
 If it is assumed that prior to the October 6 meeting the officers were unaware that the taxes had not been paid, there is no dispute as to any material fact, unless that very lack of knowledge would relieve them of liability. However, the legal effect of that fact as material or immaterial is properly resoluble on motion for summary judgment. See, e. g., Ralli-Coney, Inc. v. Gates, 5 Cir. 1976, 528 F.2d 572, 574.
 
 IV.
 
 17
 The trial court did not attempt to determine whether the officers assessed were responsible persons before October 6. It found that from that date, when they acquired actual knowledge of the tax liability, they were responsible. However, as we have indicated, responsibility is a matter of status, duty and authority, not knowledge. On October 6 no one's status, duty or authority changed. The statute as construed in Slodov, supra, makes it clear that each of the appellants was a responsible person before as well as after October 6. The officers, directors and the general manager of the corporation were in complete control of its affairs. Their authority to see that trust funds were remitted made them "responsible persons" under § 6672. Liddon v. United States, supra, 448 F.2d at 512; Brown v. United States, 5 Cir. 1972, 464 F.2d 590, Cert. denied, 1973, 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270; Hewitt v. United States, supra; Anderson v. United States,supra; Monday v. United States, supra.
 
 
 18
 While Moore did not have the same authority as the officer-directors, he had greater management responsibilities. He could have refrained from signing checks on the payroll and salvage account to other creditors until the United States was paid. He also had authority over the controller, Lavoie, on whom all of the appellants place blame.
 
 
 19
 The conclusion that the appellants were responsible persons is supported by our prior decision in Liddon v. United States, supra ; we there held that evidence that a director was the only person at the company's home office who was permitted to sign checks supported a finding that he was a responsible person, even though the right-hand man did most of the check signing and supervised the clerical operations of the company.
 
 
 20
 The real issue here is whether the officers assessed acted willfully in failing to discharge their duty after October 6. With respect to the question of willfulness, the trial court found it undisputed that after October 6 each officer save Sadler signed one or more checks paying private creditors in preference to the government, and that Sadler actually knew the taxes were unpaid, and yet took no action. Moreover, the court found it undisputed that there were monies available after October 6 with which to restore the trust funds.[2] On this basis, the court concluded that the officers' failure to attend personally to discharge of the corporate liability must be considered willful.
 
 
 21
 The issue of willfulness is necessarily directed to the state of the responsible person's mind, a subjective determination. This determination is usually factual, and "if sufficiently controverted, would preclude the granting of a summary judgment on penalty liability," Teel v. United States, supra, 529 F.2d at 905. However, as the court held in Teel, supra, evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness. See also Kalb v. United States, supra, 505 F.2d at 511, and our decision in Moore v. United States, 5 Cir. 1972, 465 F.2d 514, 516, Cert. denied, 1973, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688, sustaining the correctness of a charge to the jury that the taxpayer's conduct was willful as a matter of law.
 
 
 22
 In essence the appellants' primary argument is that an issue was created with respect to willfulness by their contention that Lavoie, the controller, misled them by asserting that he had taken care of the matter or would take care of the matter for them. However, once they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible and the government would be required to monitor corporate affairs daily. The statutory concept of willfulness conveys no such meaning.
 
 
 23
 The appellants also contend that Slodov holds that responsible persons are not subject to a duty to use after-acquired funds to pay withholding taxes, and that, therefore, their actions were not "willful" because the only funds available to pay withholding taxes after they became aware of Savannah's withholding liability were funds acquired after that obligation became payable. However, as our discussion of Slodov indicates, their argument is based on a misreading of that decision; its holding regarding liability for failure to apply after-acquired funds to withholding taxes is limited to the situation of an individual becoming a responsible person after those taxes are payable and trust funds have been dissipated. In the case of individuals who are responsible persons both before and after withholding tax liability accrues, as the appellants were in this case, there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.
 
 
 24
 In conclusion, there can be no serious dispute concerning the correctness of the court's conclusion that each of the officers was a person who had ultimate authority over the corporate expenditures, could have seen to it that the taxes were paid, and who can fairly be said to have acted purposely, that is to say, willfully, in devoting available corporate funds to purposes other than payment of withholding taxes.
 
 
 25
 Because the officers assessed are jointly and severally liable for the penalty provided in § 6672, See Brown v. United States, 5 Cir. 1979, 591 F.2d 1136, it is not necessary to apportion liability in this case. In addition, because the government has stated that its policy is to collect only 100 percent of the employer's deficiency, it is unnecessary to decide whether the government may collect the full § 6672 penalty from both Brown and Sibley; nevertheless, we note that it is doubtful whether the government may obtain more than one satisfaction of Savannah's withholding liability, which underlies the liability of the appellants. Id.
 
 
 26
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 We note that the Court's language also does not rule out the possibility that, where there has been no accession to control, funds acquired after withholding tax liability has accrued may be "trust funds" within the meaning of § 7501
 
 
 [2]
 On October 6, the corporation had on hand about $34,000. Subsequently during the month of October, and prior to Moore's dismissal on November 1, the corporation deposited approximately $58,000 in its general account. The taxpayers neither alleged nor offered any evidence that these funds were encumbered or otherwise restricted so that they were unavailable for payment of withholding taxes