**Ralph M. GUITO, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 87–577–CIV–T–17C.**

United States District Court, M.D. Florida, Tampa Division.

April 26, 1991.

Joe M. Gonzalez, Lutz, Fla., for plaintiff.

Michael A. Cauley, Asst. U.S. Atty., Tampa, Fla., John M. Bilheimer, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Robert F. Nunez, Nunez & Deakyne, St. Petersburg, Fla., mediator.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This matter came on for trial before this Court, sitting without a jury, on June 27, 28 and 29, 1990. Plaintiff, Ralph M. Guito, Jr., seeks a refund of $12,730.75 paid by him as a result of an assessment made against him by Defendant pursuant to 26 U.S.C. §§ 6671 and 6672. Defendant sought the assessment from Plaintiff as a responsible officer of All–Right Pest Control, Inc.

After consideration of the testimony, both lay and expert, exhibits, pre-trial stipulation, and arguments of counsel, the Court makes the following findings of fact and conclusions of law. To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any legal conclusions constitute a finding of fact, they are adopted as such.

## FINDINGS OF FACT

1. Plaintiff, Ralph M. Guito, Jr., and two other men formed a corporation called All Right Pest Control, Inc. (ARPC), in 1979. (Testimony of R. Guito, V. Greco; Hyatt Deposition.)

2. Plaintiff and Gary Hyatt each contributed $3000 as capital to ARPC. Vincent Greco, who had extensive experience in the pest control business, contributed his knowledge, customer contacts, and a small amount of equipment. Each of the three was to receive one-third of the stock of the corporation. (Testimony of R. Guito, V. Greco; Hyatt Deposition).

.3. Vincent Greco served as president of ARPC and managed its day-to-day operations throughout its existence. (Testimony of R. Guito, V. Greco; Hyatt Deposition).

4. Gary Hyatt served as vice-president of ARPC when it was formed. He kept the books of the corporation and was jointly responsible with Mr. Greco for sales and service. He left ARPC to form his own pest control firm in September, 1981. (Testimony of V. Greco; Exhibit 5; Hyatt deposition).

5. In 1980 ARPC became delinquent in paying its federal employment taxes. Hyatt and Greco approached Plaintiff for a loan. Plaintiff lent the corporation $1000 to pay back taxes. (Testimony of R. Guito, V. Greco; Exhibit 4; Hyatt Deposition, pp. 19–20).

6. On later occasions, Plaintiff also lent funds to ARPC, for a total of $3500 in loans. At the time of each loan, Plaintiff was aware of the purposes for which the corporation needed funds, including the 1980 employment tax delinquency. (Testimony of R. Guito, V. Greco; Hyatt Deposition).

7. After Gary Hyatt's departure, and for all the calendar quarters at issue in this case, Plaintiff and Vincent Greco had complete control over all the corporation's affairs. (Testimony of R. Guito and V. Greco).

8. Vincent Greco took over the responsibility of keeping the corporate books after Gary Hyatt left. The corporation thereafter began to fall behind in making its employment tax payments. (Testimony of V. Greco; Exhibits 33–34; 42–46).

9. Vincent Greco either had no understanding of the need to make the employment tax payments or ignored the obligation to do so.

10. Plaintiff became a director of ARPC and Chairman of its Board in April, 1982. (Exhibits 7, 8, 24.)

11. In June and September of 1982, Plaintiff had the corporation repay him his $3000 capital investment and $2500 of the loans he had made to it. (Exhibits 9, 10; testimony of V. Greco).

12. The Internal Revenue Service began an investigation of ARPC's employment tax liabilities in July of 1983. It contacted the three principals during the latter part of the year and took statements from each of them. (Testimony of M. Louie; Exhibits 20, 22.) Vincent Greco closed the business down and turned the corporate assets over to the Internal Revenue Service in late August or September. (Testimony of V. Greco.)

13. The corporation has unpaid employment tax obligations outstanding for the last calendar quarter of 1981; the first, second and fourth quarters of 1982; and the first three quarters of 1983). (Exhibit 2).

14. The Internal Revenue Service assessed both Vincent Greco and Plaintiff for the "trust fund" portions of the unpaid employment taxes for these seven quarters, under Internal Revenue Code (26 U.S.C.) § 6672. (Exhibit 1; testimony of V. Greco).

15. Plaintiff paid the assessment made against him in full, in the amount of $12,730.05. Plaintiff submitted a timely claim to the Internal Revenue Service for a refund of those taxes and timely filed this suit after the IRS denied his claim. (Exhibits 28, 29; testimony of R. Guito; Complaint).

16. There is a sharp conflict in the evidence as to the extent of Plaintiff's participation in corporate decision-making. Plaintiff claims he had little contact with the other two principals, knew nothing about the corporate finances, and had no role in formulating corporate policy. (Testimony of R. Guito).

17. Gary Hyatt and Vincent Greco assert that they consulted with Plaintiff regularly, at intervals of roughly once a month. At these meetings all important corporate affairs were discussed and all three principals participated significantly in making decisions for the business. (Testimony of V. Greco; Hyatt Deposition, pp. 11–12, 13–14, 24–26, 28, 33; Exhibits 22, 25).

18. One major item of disagreement in the testimony of the principals was an alleged requirement that all ARPC expenditures above a certain dollar amount had to be approved by the Board of Directors, or by Plaintiff personally. The principals variously described the threshold expenditure level at one time or another as being $200, $500 and $1000. (Testimony of R. Guito, V. Greco, M. Louie; Exhibits 11, 22, 25). The figure most often recited was $500. One witness referred to the requirement as "the $500 rule" and the Court adopts that terminology for convenience.

19. Plaintiff's statements regarding the existence and extent of the $500 rule are inconsistent. When Plaintiff first spoke to an Internal Revenue Service official investigating this case, he indicated that the $500 rule applied to all expenditures. Later in the same conversation, after being advised of his possible personal liability for corporate taxes, Plaintiff said the rule applied to purchases only. (Testimony of M. Louie). In a set of corporate minutes drafted by Plaintiff, different dollar levels were said to apply to "extraordinary" disbursements and to the signing of checks generally, and the Board of Directors was the approving authority. (Exhibit 11.) In his testimony before this Court, Plaintiff asserted that he simply encouraged Vincent Greco to consult with him on major expenditures, merely in order to try to make Greco stop and give some thought to expenditures prior to making them. (Testimony of R. Guito).

20. Gary Hyatt died before the trial of this case. His deposition was taken prior to his death, and was introduced into evidence. Hyatt testified that the $500 rules

**1448**

was adopted at Plaintiff's insistence, with Plaintiff requiring the other two principals to obtain his approval before making large expenditures. Gary Hyatt was not certain whether the threshold amount was $200 or $500. Hyatt stated that the rule was in effect from the beginning of ARPC's operations but became more rigorously enforced by Plaintiff after he lent the corporation $1000 to pay overdue employment taxes in 1980. (Exhibits 22, 25; Hyatt deposition, pp. 10–11.)

21. The testimony of Vincent Greco as to the details of the $500 rule was unclear and confusing. Vincent Greco did however consistently testify that Guito insisted throughout on having approval authority over large expenditures, with $500 generally being the threshold figure. (Testimony of V. Greco).

22. One of the difficulties involved in determining the existence and nature of the $500 rule is that ARPC kept almost no corporate records and observed very few of the normal corporate formalities. No stock certificates were ever actually issued. (Testimony of R. Guito, V. Greco). Only two sets of corporate minutes exist, one being a preprinted, standard-form set of minutes dealing with the initial organizational meetings of shareholders and the Board of Directors. These were dated April 28, 1982, some two and a half years after the corporation actually being operations. (Exhibits 7, 8).

23. The second set of minutes concerned a board meeting held on February 23, 1983. This is the set of minutes referred to in Finding of Fact No. 19, above. One version was that no check for $500 or more could be signed without advance Board approval. The other was that "extraordinary" purchases and disbursements of $1000 or more required Board approval. (Exhibit 11).

24. The matter of the existence and the terms of the $500 rule is part of the broader questions of the extent of Plaintiff's knowledge of and involvement in the financial and policy affairs of ARPC. The inconsistencies in his statements regarding the $500 rule have been set out above at Finding of Fact No. 19. Plaintiff's statements about the larger issue of his overall role in the corporation have also been inconsistent. Plaintiff acknowledged repeatedly during the trial that he was a shareholder of ARPC and stated he never denied that being a shareholder; however, in a letter to the investigating Internal Revenue Service official Plaintiff wrote that he had never been a shareholder, and underlined the word "never." Plaintiff concluded the letter with a declaration that all statements he made in it were true, under penalties of perjury. (Exhibit 24; Testimony of R. Guito). Plaintiff further stated in the same letter that he had attended only one board meeting (the 1982 meeting), yet Plaintiff drafted the minutes of both the 1982 and 1983 meetings which reflected his attendance. (Exhibits 7, 8, 11, 24; testimony of R. Guito and V. Greco).

25. On these issues the Court finds Plaintiff's testimony and prior statements to be inconsistent and evasive. The Court further finds Mr. Greco's testimony to be confused and inconsistent. The Court finds Mr. Hyatt's testimony to be clear, consistent and coherent in all material respects.

26. There is also an issue as to whether Plaintiff remained a one-third owner of ARPC or became its sole owner. In connection with Plaintiff's loan to the corporation to pay taxes in 1980, all three owners signed an agreement which affected their ownership rights. Plaintiff drafted the agreement, but copies were never furnished to Mr. Hyatt or Mr. Greco. Plaintiff cannot locate a copy of that agreement. (Testimony of R. Guito, V. Greco.)

27. Plaintiff testified that the stock agreement represented a pledge of the stock held by the other two owners as security for his loan to the corporation. Plaintiff testified that the stock was to have been returned when the loan was repaid. (Testimony of R. Guito).

28. Mr. Hyatt and Mr. Greco understood the agreement to be a complete transfer of their stock ownership to Mr. Guito. Mr. Greco believed that he would get his stock back at some time in the

future because he trusted Mr. Guito to return it, but in the meantime Mr. Guito was the 100 percent owner of the corporation. (Testimony of V. Greco; Hyatt Deposition, pp. 8–9.)

29. It is not necessary for the Court to determine what the stock agreement actually said. The significance of the agreement is that both Mr. Greco and Mr. Hyatt believed Mr. Guito to be the sole owner of ARPC, and treated him as such. (Testimony of V. Greco, Hyatt Deposition, pp. 8–9, 32).

30. Mr. Greco has a high degree of self-interest in having Mr. Guito determined to be responsible for payment of ARPC's taxes, in that both of these men have been assessed for payment of the taxes. To the extent that Mr. Guito pays the taxes, Mr. Greco will not have to. Mr. Guito has an even higher degree of self-interest. Mr. Hyatt has no such self-interest, since he has not been and will not be assessed for payment of taxes. (Testimony of W. Orr; testimony of V. Greco).

31. Both because Gary Hyatt is the only disinterested witness and because his testimony is the most consistent, the Court credits the testimony of Mr. Hyatt on the issues involving Mr. Guito's role. Mr. Hyatt's statements to the Internal Revenue Service when he was first interviewed, a letter written subsequently, and his deposition all indicate that Mr. Guito considered himself to be chief policy maker and "the boss" of ARPC, to the extent that he forced that view of his role on his two co-owners. (Exhibits 22, 25; Hyatt Deposition, pp. 6, 10–12, 13–14, 22–26, 28).

32. The Court finds that Mr. Guito was kept informed, at his own insistence, of all significant financial matters and that he participated significantly in major decisions affecting the corporation.

33. There were more than sufficient funds available in the corporate accounts to pay the tax delinquencies from and after the time when Plaintiff became Chairman of the ARPC Board in April, 1982. (Exhibits 26, 27).

34. There were more than sufficient funds available in the corporate accounts to pay the tax delinquencies from and after the time when the corporation repaid Mr. Guito his $6500 in investment and loans in mid–1982. (Exhibits 9, 10, 26, 27.)

35. There were more than sufficient funds available in the corporate accounts to pay the tax delinquencies from and after the February, 1983 board meeting. (Exhibits 26, 27).

36. There is insufficient evidence as to whether there were sufficient funds available in the corporate accounts to pay the tax delinquencies from and after August 8, 1983, the date on which Mr. Guito was first contacted by an Internal Revenue Service official and specifically notified by him of the outstanding tax liabilities. (Testimony of M. Louie). However, there was not less than $9541.81 available from and after that date, as reflected on the corporate bank statements for the month of August, 1983. The statements for September and later months were not available. (Exhibit 26.) (Figure calculated by taking bank balance as of close of business on 8/8/83, and adding deposits thereafter.)

37. Mr. Guito made no effort to insure payment of the outstanding tax liabilities after the date on which he received specific notice from the Internal Revenue Service of those liabilities, he made no effort to insure payment of the liabilities after the February, 1983 formal Board adoption of the $500 rule, he made no effort to insure payment of the liabilities after he received repayment of his loans and investments in 1982, and he made no effort to insure payment of the liabilities after he was elected to the Board in April, 1982. Plaintiff never made an effort to insure the payment of ARPC's tax liabilities at any time after the 1980 tax delinquencies were brought current. (Testimony of R. Guito, V. Greco; Exhibits 1, 2).

38. Plaintiff was aware of Mr. Greco's inadequacies as a financial manager. Although Plaintiff's statements about his knowledge of corporate affairs are generally exculpatory, as outlined above, his own testimony about the reason for the $500 rule indicates that Plaintiff knew Mr. Gre-

co was likely to spend corporate funds without thinking. (Testimony of R. Guito).

39. Throughout ARPC's existence, Vincent Greco and Gary Hyatt recognized Ralph Guito as having the dominant role in fixing corporate policy, and making decisions for the corporation. Plaintiff may not have possessed the right to decide corporate matters entirely unilaterally, but his authority and status were at all times at least as great as that of a "first among equals." He did not exercise his authority with respect to each and every corporate act, but he retained the effective authority to control corporate decisions of all types throughout the corporation's existence. (Testimony of V. Greco; Hyatt Deposition, p. 28; Exhibits 22, 25.)

40. The Court finds that Ralph Guito, Jr. had ample authority and status within the corporation to have compelled the payment of ARPC's taxes at any time.

41. Because of Plaintiff's dominant role in setting corporate policy, the Court finds that Ralph Guito, Jr. was a responsible person within the meaning of Internal Revenue Code (26 U.S.C.) § 6672.

42. Mr. Guito's failure to see to it that ARPC's taxes were paid, or even to inquire about their payment, at least after the time of his becoming Chairman of the Board in April, 1982, constitutes a reckless disregard of his duty as a responsible party.

43. Because of Plaintiff's knowledge of Vincent Greco's difficulties in managing the company's finances, his knowledge of the company's prior tax problems, and his disregard of his duty to see that the taxes were paid, the Court finds that Mr. Guito's failure to insure the payment of taxes was willful within the meaning of § 6672.

## CONCLUSIONS OF LAW

1. Plaintiff's claim for refund and this lawsuit were timely filed, and the Court has jurisdiction of this case. 28 U.S.C. §§ 1340, 1346.

█ 2. In cases where the Internal Revenue Service has imposed a penalty under Internal Revenue Code § 6672, the Court must first determine whether the taxpayer

involved was a responsible party. *Thibodeau v. United States*, 828 F.2d 1499 (11th Cir.1987); *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979).

█ 3. Responsibility is a question of the taxpayer's status, authority and duties within the business enterprise which has failed to pay its employment taxes. *Thibodeau, supra; George v. United States*, 819 F.2d 1008 (11th Cir.1987); *Mazo, supra.*

█ 4. More than one responsible person may be involved in the affairs of a business which has failed to pay its employment taxes. *Howard v. United States*, 711 F.2d 729 (5th Cir.1983); *Mazo, supra.* In this case, the taxpayer attempted to establish that Vincent Greco was the sole responsible party, or was a "more responsible" party than Plaintiff. The taxpayer did not establish that Vincent Greco was the sole responsible party, and it is legally irrelevant whether Vincent Greco is "more responsible" than Ralph Guito, Jr.

█ 5. When several individuals together exercise complete control over the financial affairs of a business enterprise, each person is a responsible party under § 6672. *Smith v. United States*, 894 F.2d 1549 (11th Cir.1991); *Mazo, supra*, 591 F.2d at 1156. Here, Mr. Guito and Mr. Greco together exercised full control over ARPC's financial affairs, and both are responsible parties.

█ 6. Another test for responsible party status is whether the taxpayer effectively held sufficient power within the corporation to see that the taxes were paid. *Thibodeau, supra*, 828 F.2d at 1504–1505; *Howard, supra*, 711 F.2d at 734. Mr. Guito held such power within ARPC.

█ 7. Further, a person need not have the final say on payment of corporate bills in order to be a responsible person. *Brown v. United States*, 464 F.2d 590, 591 (5th Cir.1972). Here, although Mr. Guito did have the authority to decide whether corporate funds should be expended, it is not necessary that Mr. Guito have that authority for the Court to find him a responsible party.

8. The Court must also determine whether the taxpayer acted willfully in failing to pay over the taxes. On this issue, as on the responsible party question, the taxpayer challenging the penalty assessment bears the burden of proof. *Smith, supra; George v. United States, supra,* 819 F.2d at 1011; *Ruth v. United States,* 823 F.2d 1091, 1093 (7th Cir.1987); *Mazo, supra.*

9. One who occupies a position of authority cannot avoid liability under § 6672 merely by disregarding his obligation to see that the taxes are paid or by delegating to someone else the responsibility of paying the taxes. He remains under an affirmative duty to insure that the taxes are in fact paid. *Mazo, supra,* 591 F.2d at 1157; *Hornsby v. Internal Revenue Service,* 588 F.2d 952 (5th Cir.1979). Mr. Guito may not escape liability here with his implicit claim that he had delegated the authority to pay taxes to Mr. Greco.

10. In addition to his liability because of his failure to see that the taxes were paid, Mr. Guito is also liable because of his knowledge of ARPC's earlier, 1980, tax delinquency, together with the knowledge that he had as to Mr. Greco's abilities as a financial manager. *Brown, supra.*

11. Reckless disregard of the question of whether taxes were paid, like that exhibited by Mr. Guito in this case, fulfills the willfulness requirement of § 6672, and renders a taxpayer liable under it. *Mazo, supra,* 591 F.2d at 1154.

12. The Internal Revenue Service was correct in assessing Mr. Guito for the unpaid employment taxes, and this case should be dismissed. The Clerk of Court is directed to enter a final judgment in favor of Defendant.

DONE and ORDERED.