T.C. Memo. 2017-35

UNITED STATES TAX COURT

CHARLES D. SHAFFRAN, SR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12611-12L.                          February 16, 2017.

Charles D. Shaffran, Sr., pro se.

Miriam C. Dillard, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  This case arises from a petition for review filed in

response to a Notice of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330 (notice of determination) in which respondent

determined to sustain a lien notice filing and uphold a notice of intent to levy with

[*2] respect to petitioner's below-listed liabilities.[1]  Respondent determined that petitioner was liable for trust fund recovery penalties (TFRPs) for the following periods:

| Taxable period | TFRP assessed amount |
| --- | --- |
| 9/30/2006 | $18,694.34 |
| 3/31/2007 | 16,795.17 |
| 6/30/2007 | 19,917.75 |
| 9/30/2007 | 12,487.95 |
| 12/31/2007 | 10,061.49 |

The issue for decision is whether petitioner is liable for the TFRPs assessed against him.  We hold that he is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Florida at the time the petition was timely filed.

Background

Petitioner spent much of his adult life in Michigan working for Ford Motor Co.  Petitioner and his wife, Maria Shaffran, moved to Florida in either 2005 or

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

[*3] 2006 after he had suffered a heart attack and she had suffered three strokes. Petitioner was 77 years old at the time of trial.

In March 2006 Paul Roberts organized the Restaurant Group of Destin, LLC (Restaurant Group), which opened Sunset Charlie's, a beachside restaurant in Miramar Beach, Florida. Mr. Roberts was Restaurant Group's owner and managing member during the tax periods in question.[2] Along with petitioner's son Carlos D. Shaffran, Mr. Roberts oversaw Sunset Charlie's day-to-day operations, including payroll-related matters.

Restaurant Group maintained three bank accounts at Whitney National Bank: an operating account, a "payroll" account, and a "tax" account. Mr. Roberts and Carlos were authorized signatories on all three accounts and regularly signed checks drawn on them.

During Sunset Charlie's existence petitioner visited the restaurant two or three times per week for several hours. While there petitioner "sat around" at the bar and sometimes acted as a "gofer" for Mr. Roberts and Carlos. Much of

---

[2] Restaurant Group's initial articles of organization dated March 9, 2006, showed Mr. Roberts as the sole managing member. An amendment to the articles of organization dated April 5, 2006, added Angela J. Miller as a managing member. An amendment to the articles of organization dated September 28, 2006, added Michael Roberts as a managing member. Angela Miller resigned on August 28, 2006. Michael Roberts resigned in January 2008.

[*4] petitioner's time at the restaurant was social.[3] However, under Mr. Roberts' and Carlos' direction, petitioner occasionally trained bartenders, received deliveries, and provided suppliers with checks signed by Mr. Roberts or Carlos. Sometimes petitioner wrote out checks for Carlos to sign because petitioner had more legible handwriting. Some of these checks were written to petitioner or Mrs. Shaffran in partial repayment of a $6,500 loan that she had extended to Restaurant Group.

In August 2006 Mr. Roberts was out of town. Between August 3 and 14, 2006, petitioner signed four checks drawn on Restaurant Group's operating account. Petitioner signed two of these checks to pay suppliers for deliveries that arrived when neither Mr. Roberts nor Carlos was available.[4] Petitioner signed the other two checks, which were payable to petitioner and Mrs. Shaffran in partial repayment of her loan, at the behest of Mr. Roberts.[5] Whitney National Bank

---

[3] Mrs. Shaffran's three strokes left her physically disabled. Petitioner often brought her to Sunset Charlie's so that she could get out of the house and enjoy the beachside views. Petitioner would also spend time at the restaurant while Mrs. Shaffran received physical therapy at a nearby swimming pool.

[4] Both checks were for the amounts on the suppliers' bills. Petitioner did not know what Restaurant Group's bank balances were when he signed the checks.

[5] Mr. Roberts instructed petitioner to write the checks out and sign Mr.

(continued...)

[*5] honored all four checks even though petitioner was not an authorized signatory. Petitioner did not sign any other checks on behalf of Restaurant Group or otherwise determine how it spent its available funds.[6]

Restaurant Group struggled financially and did not remit employment taxes to the Internal Revenue Service (IRS) for the third quarter of 2006, all four quarters of 2007, or the fourth quarter of 2008. Restaurant Group also fell behind on payments to its suppliers and its landlord. In 2008 Restaurant Group was evicted from the location where it had operated Sunset Charlie's. It ceased doing business that year.

IRS Investigation and Assessment of Tax

In February 2011 Revenue Officer Cynthia Kane (RO Kane) was tasked with investigating Restaurant Group's failure to pay employment taxes. On February 28, 2011, RO Kane visited the premises where Sunset Charlie's had operated. RO Kane spoke with the building manager, who informed her that the

---

[5](...continued)
Roberts' name. Because he was concerned about "forging" Mr. Roberts' name, petitioner signed his own name on the checks instead.

[6] Restaurant Group issued approximately 469 checks during the third quarter of 2006. Accordingly, the percentage of checks that petitioner signed was less than 1% of all checks that Restaurant Group issued during the third quarter of 2006.

[*6] restaurant had been evicted in July or August 2008. In a followup telephone call the building manager told RO Kane that Mr. Roberts and Carlos had held themselves out as Sunset Charlie's owners. The building manager described petitioner as an "older man" and incorrectly identified him as the restaurant's bookkeeper.

RO Kane was concerned that the period of limitations for the assessment of the 2007 TFRPs was due to expire on April 15, 2011. Thus, on March 17, 2011, only 18 days after she began her investigation, RO Kane recommended assessing TFRPs against petitioner, Mr. Roberts, Carlos, and the two other managing members, Angela Miller and Michael Roberts. In accordance therewith, RO Kane sent petitioner a Letter 1153, Trust Fund Recovery Penalty Letter, dated March 17, 2011, at his last known address (a post office box he shared with Carlos) via certified mail. The Letter 1153 stated that the IRS was proposing TFRPs against petitioner. It also stated that petitioner had 60 days to file a formal protest with the IRS contesting the proposed assessment of the TFRPs. Petitioner did not receive or otherwise learn about the Letter 1153 because Carlos intercepted it and did not turn it over to petitioner.[7]

---

[7] The return receipt attached to the Letter 1153 in the administrative record bears Carlos' signature, not petitioner's.

**[\*7]** Before issuing the Letter 1153, RO Kane did not secure Restaurant Group's bank records or make any attempt to interview the individuals against whom she was proposing TFRPs. RO Kane also failed to determine whether petitioner willfully failed to remit employment taxes to the IRS.[8] Nonetheless RO Kane went forward with her recommendation to assess TFRPs against petitioner on the basis of the limited information she had collected during her brief investigation.

In May 2011 RO Kane secured Restaurant Group's bank records from Whitney National Bank. After reviewing the bank records and discovering that Angela Miller and Michael Roberts had not signed any checks, RO Kane withdrew her recommendation to assess TFRPs against them. RO Kane did not provide similar relief to petitioner because she confused petitioner's signature with Carlos' and was therefore under the mistaken impression that petitioner regularly signed Restaurant Group's checks.

On June 2, 2011, the TFRPs were assessed against petitioner. On August 1, 2011, the IRS mailed petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to the TFRPs (levy notice). On

---

[8] On a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, prepared concurrently with the Letter 1153, RO Kane wrote: "DUE TO THE SHORT STATUTE AND RECENT RECEIPT OF THE CASE FILE, CANNOT FULLY DOCUMENT WILLFULNESS [of petitioner] AT THIS JUNCTURE."

[*8] August 11, 2011, the IRS issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice).

On August 30, 2011, petitioner timely filed a collection due process (CDP) appeal of the levy notice and the lien notice in which he challenged the underlying liabilities. The Appeals settlement officer proposed placing petitioner in currently not collectible status and abating the TFRPs for the tax periods ending December 31, 2007 and 2008.[9] Petitioner did not agree to this proposal, and the settlement officer issued a notice of determination sustaining the proposed collection actions.

Petitioner timely filed a petition with this Court. A trial was held in Jacksonville, Florida. At the close of trial the Court ordered the parties to file simultaneous briefs. Respondent timely filed his posttrial brief on February 4, 2016. Petitioner did not file a posttrial brief.[10]

---

[9] After the petition was filed, respondent abated the TFRP against petitioner for the tax period ending December 31, 2008. We granted respondent's motion to dismiss on grounds of mootness for this tax period.

[10] When a party does not file a brief on issues that have been tried, we may consider those issues waived or conceded. See, e.g., Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). We will exercise our discretion not to do so here. See, e.g., Rey v. Commissioner, T.C. Memo. 2016-58.

**[*9]**                                    OPINION

I.      Jurisdiction and Standard of Review

We first address our jurisdiction over this case and the applicable standard of review.

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for tax when a demand for payment of the tax has been made and the taxpayer fails to pay the tax. Section 6320(a) provides that the Secretary shall furnish the taxpayer with a notice of Federal tax lien filing (NFTL) within five business days after the notice of lien is filed.

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.

If a taxpayer requests a hearing in response to an NFTL or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue, including spousal defenses,

[*10] challenges to the appropriateness of the collection actions, and offers of collection alternatives. Secs. 6320(c), 6330(c)(2)(A). In addition, the taxpayer may challenge the existence or amount of the underlying tax liability, but only if the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to dispute the liability. Secs. 6320(c), 6330(c)(2)(B).

Sections 6320(c) and 6330(d)(1) grant this Court jurisdiction to review the Commissioner's determination that the proposed collection action was proper. In reviewing the Commissioner's decision to sustain collection actions, where the validity of the underlying tax liability is properly at issue, the Court reviews the Commissioner's determination of the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

The liabilities in this case involve TFRPs. The Commissioner is required to provide the taxpayer with notice of TFRPs before assessment. Sec. 6672(b)(1). A Letter 1153 provides a taxpayer with notice and the means of protesting a proposed TFRP assessment administratively with the Commissioner. Mason v. Commissioner, 132 T.C. 301, 317 (2009). When a Letter 1153 is mailed, the

**[\*11]** Commissioner must follow the same mailing procedures that are provided for notices of deficiency in section 6212(b).  Sec. 6672(b)(1).  This Court has held that the same evidence that establishes that the Commissioner mailed a notice of deficiency to a taxpayer's last known address should be sufficient to establish that the Commissioner properly sent a Letter 1153.  Mason v. Commissioner, 132 T.C. at 318 (citing Hickey v. Commissioner, T.C. Memo. 2009-2).

Respondent's issuance of the Letter 1153 by certified mail, which was sent to petitioner at his last known address, satisfies the notice requirement of section 6672(b)(1).  See id.  Thus, the TFRP assessments made against petitioner are valid.  However, a Letter 1153 that was not received, but was not refused, by a taxpayer does not constitute an opportunity to dispute the taxpayer's liability.  See id.; Fitzpatrick v. Commissioner, T.C. Memo. 2016-199, at \*18.  Accordingly, petitioner could challenge the underlying liabilities during his CDP hearing because he did not receive or reject a Letter 1153.  See Lepore v. Commissioner, T.C. Memo. 2013-135 (receipt of Letter 1153 by taxpayer's adult son did not provide taxpayer with an opportunity to challenge his liability for a TFRP).  Petitioner did in fact challenge the underlying liabilities during his CDP hearing, and the settlement officer determined that he was liable for them.  Because

**[\*12]** petitioner properly raised the issue of the liabilities during his CDP hearing, we review respondent's determination of the underlying tax liabilities de novo.

## II.    Trust Fund Recovery Penalties

We next address whether petitioner is liable for the TFRPs assessed against him.

Employers have a duty to withhold income and employment taxes from their employees' wages. Secs. 3102(a), 3402(a). These withheld funds are often referred to as "trust fund taxes" because section 7501(a) characterizes such withholdings as "a special fund [held] in trust for the United States." Mason v. Commissioner, 132 T.C. at 321. Employees generally are allowed credits against their tax liabilities for the amounts of taxes withheld from their wages, regardless of whether the employer actually remits the funds to the Government. Sec. 31(a); sec. 1.31-1(a), Income Tax Regs. Therefore, when net wages are paid to an employee and the employer does not pay over the withheld funds, the IRS has no recourse against the employees. Mazo v. United States, 591 F.2d 1151, 1153 (5th Cir. 1979).[11]

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the former Court of Appeals for the Fifth Circuit handed down before October 1, 1981. An appeal of this case would lie in the Eleventh Circuit. See

**[*13]** Section 6672 provides a collection tool allowing the Commissioner to impose penalties on certain persons who fail to withhold and pay over trust fund taxes. See Newsome v. United States, 431 F.2d 742, 745 (5th Cir. 1970). The penalty under section 6672 is equal to the total amount of the tax that was withheld but not paid over and is imposed on any "person" required to collect, truthfully account for, or pay over any tax withheld who willfully fails to do so. In this context, the term "person" is often taken to mean a "responsible person" and includes an officer or employee of a corporation who, as such, is under a duty to collect, account for, or pay over the withheld tax. See sec. 6671(b); Mazo, 591 F.2d at 1153; Mason v. Commissioner, 132 T.C. at 321. Therefore, liability for a TFRP is imposed only on (1) a responsible person who (2) willfully fails to collect, account for, or pay over the withheld tax. Mazo, 591 F.2d at 1153.

Before we address these elements,[12] we will comment on the testimony of petitioner. "As a trier of fact, it is our duty to listen to the testimony, observe the

---

[11](...continued)
Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

[12] We need not decide who has the burden of proof as to whether petitioner is a responsible person who willfully failed to collect, account for, or pay over the withheld taxes because we decide the factual issues here on the preponderance of the evidence.

[*14] demeanor of the witnesses, weigh the evidence, and determine what we believe." Kropp v. Commissioner, T.C. Memo. 2000-148, slip op. at 8. In Diaz v. Commissioner, 58 T.C. 560, 564 (1972), we observed that the process of distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is the daily grist of judicial life. Although there were a few immaterial inconsistencies in his testimony, we generally found petitioner to be honest, forthright, and credible.

Now we will address whether petitioner is a responsible person within the meaning of section 6672. Respondent argues that petitioner is a responsible person because he acted as a "de facto officer" by signing four checks and writing out several others for Carlos' signature. Petitioner argues that he is not a responsible person because he was not an owner or manager of Restaurant Group and lacked authority to sign checks or determine the priority of payment to its creditors. For the reasons below, we agree with petitioner and hold that he is not a responsible person within the meaning of section 6672.

A responsible person is any person required to collect, account for, or pay over withheld taxes. Mazo, 591 F.2d at 1153. Whether someone is a responsible person is a "matter of status, duty and authority, not knowledge." Id. at 1156. The essential question is whether the person had sufficient control over corporate

[*15] affairs to avoid nonpayment of the employment taxes. Scott v. United States, 825 F.3d 1275, 1279 (11th Cir. 2016) (citing George v. United States, 819 F.2d 1008, 1011 (11th Cir. 1987)). The Court of Appeals for the Eleventh Circuit has noted that indicia of responsibility include "the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." Thibodeau v. United States, 828 F.2d 1499, 1503 (11th Cir. 1987). In considering the individual's status, duty, and authority, the test is one of substance, and the focus of the inquiry does not involve a mechanical application of any particular list of factors. See In re DeMarco, 258 B.R. 480, 485 (Bankr. M.D. Fla. 1999) (citing Heimark v. United States, 18 Cl. Ct. 15, 23 (1989)). The inquiry must focus on actual authority to control, not on trivial duties. Id.; see also Scott, 825 F.3d at 1281 (holding that a reasonable trier of fact could find that a taxpayer is not a responsible person even though the taxpayer was (1) named the corporate secretary; (2) worked several hours per week; and (3) had duties including signing payroll checks prepared by a third party, signing nonpayroll checks for routine expenditures, and signing Forms 941, Employer's Quarterly Federal Tax Return).

The preponderance of the evidence establishes that petitioner lacked sufficient control over Restaurant Group's affairs to avoid the nonpayment of its

[*16] employment taxes during the tax periods in question. Petitioner was not an officer, director, employee[13] or owner of Restaurant Group at any time. He was never an authorized signatory on Restaurant Group's bank accounts. It is also clear from petitioner's credible testimony and the administrative record that he: (1) did not have the authority to hire and fire Restaurant Group's employees; (2) had no duty to, and did not, review or reconcile Restaurant Group's bank statements; and (3) had no control over disbursements and decisions pertaining to Restaurant Group's bank accounts, including the payroll account. Furthermore, there is no evidence that petitioner had any involvement in the preparation or filing of Restaurant Group's employment tax returns or the payment of its employment taxes.

We are not persuaded by respondent's argument that petitioner is a responsible person because he signed and/or wrote out a small number of Restaurant Group's checks. The four checks bearing petitioner's signature were all signed in the span of two weeks in August 2006 when Mr. Roberts was out of town (and before four of the five tax periods in question). Of these four checks (less than 1% of the checks Restaurant Group issued during the third quarter of

---

[13] While petitioner performed tasks for Mr. Roberts and Carlos as directed by them from time to time, he did not work regular hours or receive a salary.

**[*17]** 2006), two were written and signed only after Mr. Roberts had told petitioner to do so. The other two were signed in unusual circumstances where petitioner was the only person available to take delivery of vendor orders. Such limited check signing activity does not support a finding that petitioner had sufficient control over Restaurant Group's affairs to avert the nonpayment of its employment taxes.[14]

With respect to the checks written by petitioner but signed by Carlos, this practice only confirms that petitioner did not have authority to disburse Restaurant Group's funds. To be sure, the exercise of check signing authority is a significant factor in determining whether someone has authority to choose which creditors to pay. See Williams v. United States, 931 F.2d 805, 810 (11th Cir. 1991). In contrast, the preparation of checks for another's signature does not connote such authority. We have not found, and respondent does not cite, any authority to the contrary.

---

[14] We note that RO Kane, who was working under enormous time pressure because of the looming expiration of the period of limitations, erroneously concluded that petitioner had regularly signed Restaurant Group's checks during the tax periods in question. We believe RO Kane would have withdrawn her recommendation to assess TFRPs against petitioner had she not confused Carlos' signature with petitioner's.

**[*18]** Accordingly, we find that petitioner is not a responsible person for purposes of section 6672.[15]

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.

---

[15] Having determined that petitioner is not a responsible person within the meaning of sec. 6672, the Court need not determine whether he willfully failed to collect, account for, or pay over the trust fund taxes for the tax periods in question.