In re McLEAN INDUSTRIES, INC., First Colony Farms, Inc., United States Lines, Inc., and United States Lines (S.A.), Inc., Debtors.

UNITED STATES LINES, INC., Plaintiff,

v.

GAC MARINE FUELS LTD., Defendant.

Bankruptcy Nos. 86 B 12238 to 86 B 12241, 86–5830A.

United States Bankruptcy Court, S.D. New York.

March 12, 1987.

See also, Bkrtcy., 76 B.R. 328.

Milbank, Tweed, Hadley & McCloy by Richard D. Cleary, New York City, for debtors.

Stroock & Stroock & Lavan by Alan Kolod, Philip V. Moyles, New York City, for defendant.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

United States Lines, Inc. (the "Debtor") seeks an interlocutory judgment[1] finding GAC Marine Fuels Ltd. ("GAC Marine") to be in continuing civil contempt and requiring GAC Marine to pay to the Debtor all accrued, unpaid contempt sanctions for the period from December 23, 1986 through February 3, 1987 as set forth in an order of this Court dated December 29, 1986. GAC Marine, in opposition, principally insists that it is impossible for it to comply because it assigned its pre-petition claims against the Debtor to another entity. Upon these claims it had instituted foreign proceedings and obtained warrants of arrest against vessels operated by the Debtor. It further contends that the order should not have been entered. Trial was held on February 4, 1987.

## I.

In entering the order, the Court, in an opinion also entered on December 29, 1986, found that GAC Marine is subject to the *in personam* jurisdiction of this Court, that it had violated the automatic stay provided by § 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a) (1986) (the "Code"), by bringing certain post-petition admiralty arrest proceedings against the Debtor and two of its vessels in Hong Kong and Singapore (the "foreign proceedings"), that the bankruptcy court has jurisdiction to enjoin these violations and to issue a contempt citation. *United States Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Industries, Inc.)*, 68 B.R. 690 (Bankr.S.D.N.Y.1986). Familiarity with that opinion is assumed.

At the hearing on the afternoon of December 22, 1986, the only disputed issue was whether GAC Marine was subject to the *in personam* jurisdiction of this Court (Tr. 12/22/86 at 24). No claim was made that the order would be ineffectual, that the injury was not irreparable or that the automatic stay was not violated. Even though GAC Marine now claims to have assigned its claims on December 22, 1986, apparently in either Vaduz, Lichtenstein or Sharjah, United Arab Emirates, no evidence of the assignment was introduced. The *evidence* at the hearing indicated that GAC Marine owned the claims and was actively protecting them in the foreign pro-

---

1. *E.g., New York Telephone Company v. Communications Workers of America,* 445 F.2d 39 (2d Cir.1971).

ceedings. If the assignments occurred on December 22, given the six hour time difference between New York and Vaduz and the nine hour time difference between New York and Sharjah, GAC Marine could seemingly have telefaxed the assignment to counsel, prior to the hearing. Upon the closing of the record, counsel for GAC Marine was given until the morning of December 29, 1986 to file a brief addressing that issue. No brief was filed and the Court announced its decision that afternoon.

Prior to the Court's announcing its decision, counsel to GAC Marine informed the Court that he had not prepared a brief because it was his understanding that GAC Marine had withdrawn from the foreign proceedings on December 24 and December 26, in view of the plaintiff's seeking sanctions of $5,000 a day, which he had immediately communicated to his client. He added, however, that he had not yet seen any documents evidencing the withdrawal (Tr. 12/29/86 at 3). No motion was made to reopen the record. No witness was present to testify as to any assignment or withdrawal.

The Court accordingly ruled on the record before it. The order was entered finding GAC Marine in contempt and preliminarily enjoining GAC Marine from interfering with property of the Debtor's estate until the conclusion of this adversary proceeding. To coerce it to discontinue the foreign proceedings which constituted contempt, sanctions of $5,000 per day were ordered.

At trial on the instant matter, the parties stipulated to the evidence. That evidence indicates that on December 23, 1986, the Debtor received a telex from International GAC Marine Fuels Limited which informed it of an assignment of the claims underlying the foreign proceedings to FAL Bunkering Company Limited of Sharjah, United Arab Emirates ("FAL"). Apparently, GAC Marine occasionally transacts business with FAL. In consideration of the transfer of these claims, FAL granted GAC Marine a discharge of 50% of the debt owed by GAC Marine for bunkers sold to it by FAL which GAC Marine had sold to the Debtor.

The following day, GAC Marine's counsel made an *ex parte* application to the Supreme Court of Hong Kong, on behalf of GAC Marine and FAL, to have FAL substituted as plaintiff in place of GAC Marine and thereby continue the arrest proceeding commenced by GAC Marine. The Hong Kong court entered such an order on that date. On December 26, 1986, GAC Marine's counsel made a similar *ex parte* application to the High Court of Singapore, which also was granted with the same effect. As stipulated by the parties, the vessels originally arrested by GAC Marine continue to be restrained at Hong Kong and Singapore ports, at least through February 3, 1987.

A notice of motion in the name of GAC Marine was filed in the Singapore court requesting that court to direct a judicial sale of a vessel belonging to the Debtor, known as the AMERICAN OKLAHOMA, which was scheduled to be heard on January 23, 1987.

The Debtor asserts that GAC Marine's recent acts constitute additional and continuing violations of § 362(a) of the Code, the Restraining Order entered by this Court on the filing date, and the preliminary injunction against GAC Marine pursuant to the December 29th order. It requests this Court to enter an order declaring GAC Marine to be in continuing contempt, directing GAC Marine to pay all accrued sanctions to the Debtor and, should GAC Marine not pay, reducing the sanctions to judgment. Finally, it requests that GAC Marine provide the Debtor with an accounting of its property in the United States so that the order can be enforced.

GAC Marine admits that, to date, it has not paid any of the sanctions imposed by the Court, which presently total in excess of $220,000. GAC Marine takes the position that, because of the assignment to FAL, it is impossible for it to terminate the foreign proceedings. It asks this Court to recognize this by vacating the December 29th order. It asserts that other foreign creditors not subject to the jurisdiction of this Court had intervened in the arrest proceedings and, therefore, that this Court

should not have entered any order of contempt. GAC Marine also disputes the power of the Court to issue civil contempt decrees with respect to its own order and asserts that the $5,000 per day fine is punitive, not coercive, due to the assignment which, it asserts, makes compliance impossible. It also states that an accounting is unwarranted and that the Debtor should proceed by traditional enforcement methods.

## II.

An appeal was taken from the December 29th order. With no supersedeas bond having been filed, the instant proceeding is not stayed and GAC Marine does not claim it is. Indeed, it requests that we review that order, claiming that it should not have been entered because of the impossibility of compliance and that it could not redress the injury suffered by the Debtor (Br. at 11–13) and that the bankruptcy court lacks jurisdiction to enter a contempt decree (Br. at 15–19).

■ But with the appeal having been taken, this Court lacks jurisdiction to entertain a motion to reconsider or vacate an order appealed from absent remand. *E.g., Daniels v. Goldberg,* 8 F.R.D. 580 (S.D.N.Y.1948), *aff'd on other grounds,* 173 F.2d 911 (2d Cir.1949); *Binks Mfg. Co. v. Ransburg Electro-Coating Corp.,* 281 F.2d 252, 260 (7th Cir.1960), *cert. dismissed,* 366 U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239 (1961). Further, even assuming we had jurisdiction, such a request would not be granted.

Rule 60 of the Federal Rules of Civil Procedure ("F.R.C.P.") which is incorporated by Rule 9024 of the Rules of Bankruptcy Procedure governs such a request. Not showing mistake, surprise, excusable neglect or fraud, GAC Marine's claim of then existing impossibility amounts to nothing more than a plea of newly discovered evidence under Rule 60(b)(3). Here the "newly discovered" evidence is the assignment by GAC Marine said to have occurred on December 22, 1986 notwithstanding the belated notification to the Debtor. It is offered to support the obvious proposition that the court may not impose coercive civil contempt if the contemnor is unable to comply. *E.g., Schillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966).

But if GAC Marine is to be believed in its claim of an assignment on December 22, 1986, the evidence, as noted above, was not newly discovered after the hearing as Rule 60(b)(3) requires. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2859, at 182 (1973). GAC Marine seemingly could have put the assignment into evidence at the December 22, 1986 hearing, given the time differential. In any event, it surely had ample opportunity to reopen the record at the hearing on December 29th, prior to the order being entered.

With respect to the claim that the preliminary injunction branch of the order does not redress the Debtor's injury, we held that Congress, by enacting 11 U.S.C. § 362(a), deemed acts in violation of that section to cause irreparable injury. At the February 4, 1987 hearing, counsel to GAC Marine indicated his agreement with that holding (Tr. 2/4/87 at 53).

With respect to GAC Marine's claim of lack of subject matter jurisdiction, we held, in the December 29th opinion, that the bankruptcy court had subject matter jurisdiction to issue civil contempt orders for violations of § 362 of the Bankruptcy Code. GAC Marine's current assertion that this Court lacks such subject matter jurisdiction is based on a misunderstanding of this proceeding. It concedes that the bankruptcy courts have constitutionally been given subject matter jurisdiction to enter contempt decrees for violation of the automatic stay provided in 11 U.S.C. § 362(a) (Tr. 2/4/87 at 58). That is exactly the nature of this case. Although the complaint and motion papers also refer to the order entered by this Court on November 24, 1986, that order did no more than track 11 U.S.C. § 362(a). While there should be little, if any, doubt as to the bankruptcy court's power to enforce its own order, *see Gibbons v. Haddad (In re Haddad),* 68 B.R. 944 (Bankr.D.Mass.1987) we need not revisit that issue here in light of GAC Marine's

concession of power to issue a civil contempt decree for violation of the automatic stay.

## III.

GAC Marine's principal argument on this motion is that the assignment renders it impossible to comply with the December 29th order. But having been found in contempt by this Court, the burden of proof is squarely on GAC Marine to demonstrate that it is no longer in contempt or cannot comply. *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); *Marc Rich & Co., A.G. v. United States (In re Marc Rich & Co., A.G.)*, 736 F.2d 864, 866 (2d Cir.1984); *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 59–60 (2d Cir.1984). It must substantiate its inability to comply "plainly and unmistakably." *Donovan*, 726 F.2d at 59. This, GAC Marine has failed to do.

For example, no evidence was offered to show that GAC Marine cannot buy back the claim from FAL; FAL did not testify that it would not retransfer the claim. On this score, nothing more than assertions of counsel were made. These bald assertions do not amount to the plain and unmistakable evidence contemplated by the Second Circuit in considering this defense. *Marc Rich*, 736 F.2d at 866. As such, we do not consider them. *E.g., Rylander*, 460 U.S. at 757–58, 103 S.Ct. at 1552–53 (*ex parte* affidavit and uncross-examined testimony properly disregarded by the court in contempt proceeding).

Indeed, GAC Marine does not even assert, much less prove, that it could not obtain orders from the Hong Kong and Singapore courts vacating the orders it obtained, whereby the arrest proceedings were continued for the benefit of FAL. Thus, instead of taking steps to discontinue

those arrest proceedings as the contempt decree required, GAC Marine took the active steps of ensuring their continuation. GAC Marine thus violated 11 U.S.C. §§ 362(a)(1), (a)(4) and (a)(6) anew.[2] Its actions in violation of those sections were void. *See In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re Advent Corp.*, 24 B.R. 612, 614, 9 B.C.D. 1103 (Bankr. 1st Cir.1982); *48th Street Steakhouse, Inc. v. Rockefeller Center, Inc. (In re 48th Street Steakhouse, Inc.)*, 61 B.R. 182 (Bankr.S.D.N.Y.1986); *La Tempa v. Long (In re LaTempa)*, 58 B.R. 538, 540, 14 C.B.C.2d 949 (Bankr.W.D.Va.1986); *Serbus v. First National Bank of Elbow Lake (In re Serbus)*, 53 B.R. 187, 189 (Bankr.D.Minn.1985); *In re Wlodarski*, 52 B.R. 856, 859 (Bankr.S.D.N.Y.1985); *Capital-York Construction Corp. v. Lynnhaven Marine Construction, Inc. (In re Capital-York Construction Corp.)*, 43 B.R. 52, 55, 12 B.C.D. 263 (Bankr.S.D.N.Y.1984); 2 L. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1986). It appears that even today GAC Marine would prefer to continue to harass the Debtor, as it continued to carry out the threat, announced in its telex of November 28, 1986, of keeping the Debtor's vessels arrested "one-by-one" until it was paid its pre-petition debts.

## IV.

Failing to sustain its defense of inability to comply, GAC Marine makes the further assertions (i) that the Court is somehow "extending" its jurisdiction by holding in contempt those who would seize foreign assets of a United States debtor, (ii) that the assignments here are permitted by Rule 3001 of the Rules of Bankruptcy Procedure, and (iii) that the contempt decree is "ineffectual" because it will not free the debtor's vessels since other foreign credi-

---

**2.** Section 362 operates as a stay of
  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case under this title;

   .   .   .   .   .
  (4) any act to create, perfect, or enforce any lien against property of the estate;

   .   .   .   .   .
  (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title
    . . . .
11 U.S.C. § 362(a)(1), (4), (6).

tors have joined the arrest proceedings. These points are of no merit, even if they could be considered as excuses for GAC Marine's violations of the automatic stay notwithstanding the rule articulated in *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948), and repeated in *Rylander,* 460 U.S. at 756, 103 S.Ct. at 1552. Those cases bar reconsideration in a contempt proceeding of the "legal or factual basis of the order alleged to have been disobeyed" and "retrial of the original controversy." *Rylander,* 460 U.S. at 756, 103 S.Ct. at 1552.

With GAC Marine having conceded the bankruptcy court's power to enter a contempt decree upon a violation of the automatic stay codified in 11 U.S.C. § 362(a), its assertion of an "extension" of jurisdiction is premised on the notion that contempt should not be found where the violation takes place overseas. That notion is belied by both 28 U.S.C. § 1334(d) and 11 U.S.C. § 541 which speak of the debtor's property "wherever located" and vest the district court, and the bankruptcy court on reference pursuant to 28 U.S.C. § 157(a), with exclusive jurisdiction over it. As the Second Circuit trenchently observed in *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors),* 550 F.2d 47, 53 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), "[e]xclusive jurisdiction means exclusive jurisdiction." Thus, the December 29th contempt decree was hardly an extension of jurisdiction.

If by its argument, GAC Marine is asserting that the automatic stay should not, as a matter of discretion, be enforced against foreign creditors who transact or do business in the United States, it is plainly apparent, given GAC Marine's conduct, that to fail to enforce the automatic stay would be an abuse. Having availed itself of the benefits of conducting business here, GAC Marine cannot willfully disobey United States law with regard to such business.

Further, GAC Marine did not, it must be stressed, lack a remedy if its interests were unfairly prejudiced by the automatic stay. Pursuant to 11 U.S.C. § 362(d), it could

have sought modification of the stay and introduced evidence of cause for modification, as that section requires. Indeed, this Court, in this bankruptcy case, has entered orders permitting entities having pre-petition maritime liens that are actually secured by value in a vessel, *see* 11 U.S.C. § 506(b), to join in foreign arrest proceedings commenced by others so that those liens could be protected in those proceedings. Instead of availing itself of the opportunity to demonstrate cause and asserting that it has a lien secured by value, GAC Marine flouted 11 U.S.C. § 362(a) by starting an arrest proceeding for one vessel and joining in an arrest proceeding for another. Those acts cannot be excused.

GAC Marine's claim that all it did was assign a claim, as permitted by Rule 3001, also cannot be sustained. As this record shows, it did far more in petitioning the Hong Kong and Singapore courts to enable FAL to step into its shoes as an arresting party. Moreover, Rule 3001, contrary to GAC Marine's claim, does not legitimatize all assignments. Rather, subsections (1)–(4) of Rule 3001(e) contemplate that an assignee file a proof of claim together with other documents in order for the Bankruptcy Court to recognize a transfer of a claim. *See* Advisory Committee Note to Rule 3001(e). Those sections thereby provide a mechanism for the court to examine assignments. Undoubtedly because the filing of a proof of claim subjects the claimant to " 'all the consequences that attach to an appearance,' " *Katchen v. Landy,* 382 U.S. 323, 335, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) (quoting *Alexander v. Hillman,* 296 U.S. 222, 241, 56 S.Ct. 204, 210, 80 L.Ed. 192 (1935)); *Pongetti v. W.L. Laws (In re Self),* 51 B.R. 683, 686 (Bankr.N.D.Miss. 1985), no proof of claim has been filed by FAL.

Also without substance is the assertion that the December 29th contempt decree is "ineffectual" because it does not achieve the goal of freeing the Debtor's vessels from arrest, as other foreign creditors were also parties to the arrest proceedings and are not subject to this Court's jurisdiction. While the arrests would remain, as GAC Marine points out, even if GAC Ma-

rine were to withdraw, the purpose of the contempt decree was to secure compliance by GAC Marine, which is subject to *in personam* jurisdiction, with § 362 of the Bankruptcy Code. All GAC Marine need concern itself with is obedience to United States law as it affects business transacted here. The participation of foreign creditors in those arrest proceedings affects only the question of damages claimed by the Debtor—a question to be resolved at the ultimate trial on the merits.

 In addition, GAC Marine claims that a coercive contempt sanction should be made, as a matter of law, payable to the United States or to the Clerk of the Court, not to the Debtor. A civil contempt order, however, is for the benefit of the complainant, *Sunbeam Corporation v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir.1958), in this case, the Debtor. To make the sanction payable to the United States or the Court Clerk would strongly indicate that the sanction is criminal in nature, *Falstaff Brewing Corporation v. Miller Brewing Company*, 702 F.2d 770, 778–79 (9th Cir.1983); *Rosenfeldt v. Comprehensive Accounting Service Corporation*, 514 F.2d 607, 612 (7th Cir.1975), which this order was never intended to be (Tr. 2/4/87 at 59) and which this Court lacks jurisdiction to order. Bankruptcy Rule 9020. Furthermore, in a case such as this, making the sanction payable to the Debtor adds to its coercive nature. The extent of GAC Marine's assets in the United States is unclear. The motivation of the United States or the Court Clerk to enforce a judgment elsewhere is not likely to be as strong as that of the Debtor. Enabling the Debtor to pursue and collect a judgment for sanctions through use of the procedures set forth in F.R.C.P. Rule 69 or those in force wherever assets of defendant may be found should have the effect of bringing GAC Marine into compliance with the automatic stay.[3] That is all that the imposition of contempt sanctions seeks to accomplish.

The foregoing constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The evidence being clear that GAC Marine has not purged itself of civil contempt and has continued to act in violation of the automatic stay, the Debtor's motion must be, and hereby is granted to the extent that an order is to be entered in favor of plaintiff and against defendant declaring defendant in further contempt of 11 U.S.C. § 362(a), ordering defendant to pay accrued sanctions as set forth in the Order of December 29, 1986 through February 3, 1987, and further ordering that judgment against defendant and in favor of plaintiff in that sum be entered if defendant fails to make such payment of such sum within five days after the date of such order. It is

SO ORDERED.

---

**3.** Plaintiff also seeks an "accounting" whereby defendant would list its assets in the United States. It makes no claim, however, that the post-judgment procedures embodied in Rule 69 are inadequate. In the absence of such a pleading, we decline to order such relief at this time.