**In re Mario AMICI, Debtor.**

**Mario AMICI, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 88–6465–9P7.**
**Adv. No. 92–831.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 25, 1994.

Francis H. Cobb, Tampa, FL, for debtor/plaintiff.

Philip A. Doyle, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Complaint filed by Mario Amici (Debtor) seeking a determination that two penalties assessed against the Debtor by the Internal Revenue Service (IRS) are dischargeable. The Debtor also requests injunctive relief against the IRS. The Complaint contains two counts. The claim in Count I involves a 100% penalty assessed against the Debtor pursuant to § 6672 of the Internal Revenue Code for unpaid payroll taxes of National Building Supply, Inc. (National). The penalty was assessed upon the IRS' contention that the Debtor was a "responsible person" within the meaning of that term as defined by § 6672 of the Internal Revenue Code. The claim in Count II involves a penalty assessed against the Debtor and relates to an entirely different business, Twenty–First Street Partnership, Ltd. (21st Street), in which the Debtor was a general partner. That penalty is assessed pursuant to 26 U.S.C. § 6698 for failure to file a partnership tax return. The facts relevant to resolution of this controversy are as follows:

Prior to the commencement of this case, the Debtor was the sole stockholder in a corporation known as Amici & Sons, Inc. (Amici & Sons), a commercial building construction company located in Fort Myers, Florida. During 1984, the Debtor was approached by an acquaintance, Michael Morgan (Morgan), who wished to form his own truss manufacturing business, and sought the Debtor's help. In order to help Morgan, the Debtor purchased approximately $59,000.00 of truss manufacturing equipment for Morgan to start his business in Naples, Florida. The business was formed by Morgan under the fictitious name of National Building Supply (National). The equipment was allegedly leased by Morgan from the Debtor and the lease was secured by a deed to a vacant lot owned by Morgan.

A few months after National began to operate, the Debtor suggested that Morgan incorporate the business. The Debtor recommended an accountant and an attorney to prepare the necessary paperwork. National was incorporated under the name National Building Supply, Inc. The only documented officer of National was Christine Harvel, a

secretary employed by Amici & Sons. The Debtor was told by the attorney that he was the only stockholder and there is some evidence that he held himself out to be the owner of National. It is also true, however, that he never received any stock certificates from National.

To further assist Morgan in his new venture, Harvel prepared the weekly payroll for National on the Amici & Sons payroll system using information provided by National's management. About the time that National was incorporated, National moved its office to Ft. Myers and to began renting a portion of a building also occupied by one division of Amici & Sons that fabricated wall sections.

In January, 1985, the Debtor became aware that National was having financial difficulty when Morgan requested a loan from him, and when the lease payments due to the Debtor were delinquent. Before the Debtor would agree to the loan, he directed Harvel and Amici & Sons' accountant, Dale Learn, to investigate the financial condition of National. Despite their findings that the business was a "mess", the Debtor loaned Morgan $4,000.00 and $12,000.00, respectively, for use by National during that year.

Shortly thereafter the Debtor suggested that Morgan hire Robert Burns (Burns) to manage the operations of National so Morgan could devote his time to engineering duties. Harvel also expanded her administrative duties with National and took over the preparation of both the payroll and the accounts payable checks for National. She was an authorized signatory on the National checking account and paid those bills that the managers of National directed her to be paid. There is no evidence in this record that the Debtor was ever involved in the decision making process concerning the payment of National's bills. National had very little operating funds and paid only those bills which were necessary to keep the business going. The delinquent payroll tax returns were filed by National and sent in without payment. Both Burns and Harvel were aware that the payroll taxes were not paid.

In August or September, 1985, Burns left the employ of National following a disagreement with the Debtor and Morgan. In early 1986 National ceased operating when Morgan left National for parts unknown. After Morgan's departure, the Debtor contacted the IRS and reported his suspicions that National had not been paying its payroll taxes. It is without dispute that the Debtor provided whatever information he had to assist the IRS, and he signed both the final Form 941 for National for the payroll quarters ending March 31, 1986, and the Form 940 covering National's liability for the 1986 federal unemployment taxes. According to the Debtor, he signed both the final returns only because he was directed by the IRS and only after both Burns and Morgan abandoned National and couldn't be located.

21st Street was a limited partnership that owned and managed a commercial building in Hillsborough County prior to 1987. The Debtor was one of three general partners of 21st Street. The issue in this matter is a $9,000 penalty, assessed under § 6698 of the Internal Revenue Code, for failure to file a timely partnership tax return for the final short year of operation, January 1 through February 22, 1987. The IRS is pursuing the Debtor for the penalty because he was one of three general partners of 21st Street, he is the only partner available, and he signed the final late return.

Financial difficulties in 21st Street's operation of the commercial building resulted in a mortgage foreclosure by Freedom Federal Savings and Loan Association on January 8, 1987 in the Hillsborough County Circuit Court. The foreclosure triggered an immediate dissolution of the 21st Street partnership because it no longer had any assets.

The final partnership tax return for the short year in 1987 was due on June 15, 1987 but neither the Court appointed receiver or the person who prepared the tax returns in the past prepared the return. It wasn't until January 1988 that Mr. John Van Voris, a limited partner in 21st Street, stepped forward to prepare the return. He asked the Debtor to sign it because he was the only general partner available and the Debtor did so. The return, due June 15, 1987, was not filed until January 8, 1988 making it six

months late according to Regulation 1.443–1(a)(2).

It is undisputed that the 1987 21st Street partnership tax return was filed late, in January 1988, and that the Debtor was a general partner of 21st Street. At issue is whether or not the $9,000 late filing penalty related to the 21st Street 1987 partnership return is dischargeable by the Debtor in his Chapter 7 case.

■ Considering the § 6672 assessment first, the threshold issue to be resolved by the Court is whether the Debtor was in fact a responsible person as defined by § 6672 of the Internal Revenue Code. It should be noted at the outset that the fact the Debtor is the Plaintiff in this adversary proceeding does not shift the burden of proof. Under applicable law it is the burden of the Government to establish that the Debtor is a "responsible person" under § 6672. Recent bankruptcy cases concerning this issue have held that where the IRS did not make an assessment prior to the commencement of the bankruptcy case, the Government has the burden of persuading the Court that its claim is valid. *In re Terrell,* 75 B.R. 291 (Bankr. N.D.Ala.1987); *In re Twomey,* 24 B.R. 799 (Bankr.W.D.N.Y.1982); *United States v. Coleman American Cos., Inc.,* 26 B.R. 825 (Bankr.D.Kan.1983). The presumption of correctness usually afforded the Commissioner's determination does not apply when the assessment hasn't been made before filing. *Lesser v. United States,* 368 F.2d 306, at 310 (2nd Cir.1966), en banc.

■ In the present instance only a notice of the IRS' intent to assess the penalty, not an actual assessment, was mailed to the Debtor on October 8, 1986; the Chapter 7 case was filed October 26, 1988. Since the IRS did not make the assessment of penalty under § 6672 against the Debtor prior to the commencement of his bankruptcy case the burden of proof is placed on the Government.

■ Officers or employees responsible for the collection and payment of withholding taxes who willfully fail to do so are personally liable for a penalty equal to the amount of the delinquent taxes. *Slodov v. United States,* 436 U.S. 238, 244–45, 98 S.Ct. 1778,

1783–84, 56 L.Ed.2d 251 (1978). The assessment of 100% penalty is based on 26 U.S.C. § 6672 which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

The determination of liability under 26 U.S.C. § 6672 is a two prong test. First, the Government must establish the Debtor is a "responsible person"; second, if so, he did willfully fail to comply with the legal requirement to collect and remit the trust funds to the IRS.

■ A "responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over the withheld tax". *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979). Responsibility is a "matter of status, duty and authority, not knowledge." *Id.* at 1156. The courts have generally taken a broad view construing the term "responsible person." *Slodov v. United States,* 436 U.S. at 246–50, 98 S.Ct. at 1785 (1978); *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971). More specifically, the 11th Circuit, in *Thibodeau v. United States,* 828 F.2d 1499 (11th Cir.1987), held that the "indicia of responsibility" includes: the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees.

■ In the present instance the record is devoid of any hard evidence that the Debtor was in fact a stockholder of National. Nor is there any evidence that the Debtor was an officer of National or had any decision making responsibility in the operation of National's business. Although the Government has provided some bases to be suspicious of the Debtor's involvement in National's day-to-day operations, the Government has failed to

establish with competent evidence any of the required "indicia of responsibility". In addition, it is important to note that the Debtor's authority to disburse funds on behalf of National arose only after the corporation was abandoned by Morgan and Burns, and after the Debtor had reported to the IRS his suspicions with regard to the taxes. Only then did the Debtor become a signatory on National's bank account and there is no evidence in this record that the Debtor ever signed any National checks.

The most difficult element of the "indicia of responsibility" required by the 11th Circuit is whether the Debtor had "control" over the financial affairs of National. Here again the Government failed to show by a preponderance of evidence, that the Debtor had any control. His use of Amici & Sons, Inc. employees to evaluate the financial condition of National in 1985 can be explained by his concern for the repayment of his lease to Morgan for the equipment and by Morgan's request to borrow additional monies. The Government never established that the Debtor made or directly influenced any decision as to which National creditors were paid, let alone any decision not to pay the IRS.

The only apparent direct link between the Debtor and the financial affairs of National is Ms. Harvel, Amici & Sons, Inc. secretary/bookkeeper, who was also Vice President of National. Harvel prepared National's payroll checks and accounts payable checks on the computers located in the Amici & Sons office from information supplied by National's managers. Direct testimony of Ms. Harvel failed to establish that the Debtor was directly involved in the financial affairs of National.

In support of its position, the Government relies on *Barnett v. I.R.S.*, 988 F.2d 1449 (5th Cir.1993) which stands for the proposition that the Debtor's delegation of responsibility to Ms. Harvel does not shield him from liability under 26 U.S.C. § 6672. However, *Barnett* is easily distinguished from the present case. In *Barnett*, the "responsible person" who attempted to shield himself from liability met all the other indicia of responsibility required by that Court. In this case the Debtor does not meet any of the other indicia

of responsibility. Therefore, it cannot be said that the Debtor attempted to shield himself through delegation to Ms. Harvel because he had no responsibility for National to begin with. Based upon the foregoing, this Court is satisfied that the Government has failed to establish with the requisite degree of proof that the Debtor was a responsible person with regard to National within the meaning of § 6672. Having reached this conclusion, it is unnecessary to address the issue of whether he willfully failed to pay over trust fund monies to the IRS.

Turning to the Government's contention that the Debtor is responsible because he gained knowledge of the failure to pay prior payroll taxes but continued to pay creditors other than the United States, the record is void of any evidence that the Debtor directed the payment of any other National creditor, including himself, after informing the IRS of the National unpaid taxes. On the contrary, after discovering National's delinquent condition, the Debtor had the missing payroll tax returns prepared by his accountant, cooperated with the IRS agent investigating National, and signed the final payroll tax returns in an effort to close the National business and eliminate any personal responsibility for the past actions of its managers. Therefore, based upon the foregoing, this Court is satisfied that the Debtor was not a responsible person vis-a-vis National and therefore, the penalties assessed by the IRS are determined to be dischargeable.

■ This leaves for consideration the penalties assessed against the Debtor for a failure to file partnership returns pursuant to § 6031 of the Internal Revenue Code, which provides that every partnership is required to file an informational return. The return should be filed within four and one-half months following the year end of the partnership. If the return is delinquent § 6698 imposes a penalty for each month that the return is late. In this matter a penalty of $9,000 was assessed against the Debtor, a general partner of 21st Street prior to his filing bankruptcy.

■ Under § 523(a)(7)(A), tax penalties are discharged if they relate to a tax which is

dischargeable. See *In re Burns*, 887 F.2d 1541, at 1544 (11th Cir.1989). Since there is no tax liability associated with a partnership return, the penalties imposed under § 6698 cannot relate to a tax that is not dischargeable. Since the 21st Street partnership late filing penalty does not relate to any partnership tax liability it must be dischargeable by the Debtor under § 523(a)(7)(A). This conclusion is reinforced by the generally accepted policy that matters relating to dischargeability should be narrowly construed in favor of the Debtor. *In re Howard*, 167 B.R. 684, at 686 (Bankr.Md.Fla.1994); *First Bank of Colorado v. Mullet (In re Mullet)*, 817 F.2d 677, 680 (10th Cir.1987).

A separate final judgment shall be entered in accordance with the foregoing.