224 B.R. 212 (1998)
In re Frank P. MACAGNONE and Santina Macagnone, Debtors.
Frank P. MACAGNONE and Santina Macagnone, Plaintiffs,
v.
UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.
Bankruptcy No. 88-1119-8P7, Adversary No. 96-1001.
United States Bankruptcy Court, M.D. Florida, Tampa Division.
July 14, 1998.
*213 Nicholas Bangos, Orlando, FL, for Plaintiffs.
Philip Doyle, Washington, DC, for Defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION
ALEXANDER L. PASKAY, Chief Judge.
This is a Chapter 7 liquidation case and the matter under consideration is the dischargeability of taxes that the United States of America (IRS) claims to be due and owing by the Plaintiffs/Debtors, Frank P. Macagnone and Santina Macagnone. The alleged liability of the Plaintiffs falls into the following two separate categories: (1) federal income taxes; and (2) a tax liability based upon 26 U.S.C. § 6672 for 100 percent assessment for nonpayment of payroll taxes against Plaintiff, Frank P. Macagnone.
The Plaintiffs commenced this adversary proceeding by filing a three-count Complaint against the United States of America/IRS. The Complaint was subsequently amended. In Count I of the Amended Complaint, the Debtors seek a determination of dischargeability of unpaid federal income taxes due for the years 1980, 1983, 1984, and 1985 and a civil penalty claimed by the IRS for 1987.
In Count II, the Plaintiffs seek a determination of the legality and amount of any tax, penalty or addition of any claim by the IRS that the Court determines to be nondischargeable. The Plaintiffs seek a determination that an Installment Agreement that Frank Macagnone entered into with the IRS contains a "civil penalty" for the calendar year 1987 even though no taxes were due for that year. Mr. Macagnone further contends *214 that he made payments of $4,400.00 per month pursuant to the Installment Agreement, in addition to applying his income tax refunds for the years 1993, 1995, and 1992. Mr. Macagnone contends that his discharge absolved him of any further liability, which is outside the liability agreed upon by the Installment Agreement.
In Count III, the Plaintiffs seek a determination of the nature and validity of a tax lien for the taxes due for 1980, 1983, 1984, 1985 and 1987 which was asserted by the IRS for the first time after the entry of the Debtors' discharge. The Debtors received their discharge on March 11, 1991.
On September 4, 1997, the IRS filed a motion for partial summary judgment with respect to the dischargeability of the Debtors' federal income tax liabilities for 1980 and 1981 and the civil penalties assessed against Mr. Macagnone. On September 23, 1987, this Court entered an Order granting the IRS' motion for summary judgment in part, determining that the Debtors' assessed federal income tax liability for calendar years 1980 and 1981 are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A) and 507(a)(8)(A)(iii).
In compliance with the Pre-trial Order, the parties exchanged the list of their witnesses and filed a schedule of documents which they intended to introduce in evidence. The Plaintiffs also filed a statement of undisputed facts. Both sides agreed that the only remaining issues are (1) the Plaintiffs' income tax liability for the calendar year 1982; and (2) whether Mr. Macagnone was the "responsible person" within the meaning of 26 U.S.C.A § 6672, thus subject to the 100% assessment for nonpayment of trust fund taxes for the last quarter of 1986 and the first quarter of 1987. In due course, these remaining claims were set for final evidentiary hearing at which time the following relevant facts were established:

TAX LIABILITY OF THE RESPONSIBLE PERSON

26 U.S.C. § 6672
In the early 1980's, Mr. Macagnone, a college graduate who had taken graduate courses in finance, was the president of an operating division of U.S. Homes, a large land development company. The scope of his position was to locate properties for possible development, develop the land and design the projects.
In 1982, Mr. Macagnone formed American Management Development Corporation (American Management). Mr. Macagnone, who furnished the initial capitalization by investing $200,000, became the president and was issued 50% of the stock in the newly formed corporation. Billy Ray Barnes (Mr. Barnes) was appointed vice-president and received fifty percent of the stock in the newly formed entity, even though he did not make a capital contribution. Rather, Mr. Barnes contributed his expertise in running the day to day operation of the construction business, securing the necessary licenses, dealing with subcontractors, handling construction draws, and dealing with invoices submitted by vendors and others. Both Mr. Macagnone and Mr. Barnes were designated signatories on the checking account of the corporation.
The controller of the corporation was one Judith McAllister. It appears that she wrote the payroll checks. Ms. McAllister was not called as a witness. Mr. Macagnone categorically denied that he wrote any payroll checks and testified that it was Mr. Barnes' responsibility to do so. Mr. Barnes denied that he prepared construction draws or signed any payroll checks.
The financial downfall of a seemingly successful enterprise is attributable to a development project referred to as Tall Pines. Tall Pines was a joint venture of American Management and Sunrise Savings & Loan (Sunrise) which, like many other savings and loan association, was closed down by the Office of Thrift Supervision. In an attempt to obtain much needed financing, the Debtor tried to work with the Federal Asset Disposition Association (FATA) without success. American Management ultimately ceased operating and filed its Petition for Relief under Chapter 11 of the Bankruptcy Code on March 14, 1988. Having failed to achieve confirmation, American Management's case was converted to Chapter 7 on January 3, 1989, and closed on May 1, 1990.
*215 The IRS presented the testimony of the IRS Revenue Officer who was assigned the task of collecting the unpaid taxes due from American Management. The Revenue Officer testified that it was his duty to determine who was the responsible person for the 100% assessment under 28 U.S.C. § 6672. The Revenue Officer testified that he had interviewed Mr. Macagnone in February 1988 at the IRS collection office located in St. Petersburg, Florida. The Revenue Officer also testified that he recalls that Mr. Macagnone had admitted to liability.
The Revenue Officer testified that simultaneously with the interview, he had filled out IRS Form 4180 entitled "Report of Interview Held With Persons Relative To Recommendation of 100-Percent Penalty Assessment." (Defendant's Exh. 1). The information filled in by the Revenue Officer is that he interviewed Mr. Macagnone on February 4, 1998 and that Mr. Macagnone stated that he had been the president of American Management from the date of the commencement of the business in 1982 through 1988. The form also recites that Mr. Macagnone's responsibilities were to act as "CEO" while Barnes was the construction manager; the Mr. Macagnone and Barnes were the officers and directors during and after the periods of delinquency. The form also contains the entry that the business ceased operating in July 1987 due to insolvency caused by the source of the construction loans failing; that Mr. Macagnone first became aware that the tax liability was not paid as the liability accrued; that other obligations had been paid while attempting to secure financing; and that the payment of these other obligations were authorized by "Macagnone a/o Barnes."
Although the Revenue Officer testified that he had prepared the Form simultaneously with the interview on February 4, 1988, in response to the printed form question, "What is the present status of the corporation?", there is the written entry, "Chapter 11 Filed 3-14-88." The Revenue Officer testified that he had added information to the Form after February 1988. Although the Report has a signature line both for the person interviewed and the interviewer, it bears no signature of either
There is no evidence in this record to show that the Debtor received any payment either by way of salary, bonus, commission or repayment of loans after the Sunrise funding dried up.
It is without dispute that the IRS sent to Frank P. Macagnone, Form 2749 Request For Payment for 100 Percent Penalty Assessment. (Defendant's Exhibit 2). The assessment was in the amount of $55,107 .50, representing a penalty for the last quarter of 1986 and the first two quarters of 1987. The Penalty Assessment is undated and unsigned. It also indicates that a related assessment had been made against Mr. Barnes.
The Penalty Assessment was based on the Revenue Officer's recommendation. The Revenue Officer filled out Form 4183 entitled, "Recommendation re 100-Percent Penalty Assessment," stating,
Section 1. Persons against whom the 100-percent penalty is being considered (list all potentially responsible persons)
1. Name, title, address, and basis for recommendation Frank P. Macagnone, President . . .
As CEO of AMD Inc. Mr. Macagnone admits liability for trust fund taxes.
He managed all financial affairs for the now-defunct corporation; he was signer on bank signature cards and routinely exercised this authority; he was aware of unpaid federal taxes. Willfulness and responsibility cannot be disputed.
2. Name, title, address and basis for recommendation Billy R. Barnes, VP . . .
As vice president Mr. Barnes functioned as construction manager, per Macagnone's Statement. He was the only other signer on corporate checking. He was aware of the federal tax liability and of his potential personal liability for withheld taxes; he does not dispute assertion of the penalty.
The Form was signed by the Revenue Officer on February 25, 1988 and by who appears to be his supervisor on April 4, 1988.
*216 While it is without dispute that Mr. Macagnone was a signatory on the bank account and that he did sign checks, the Debtor flatly denies that he admitted liability for the trust fund taxes. The Revenue Officer did not seek or receive or review any of the cancelled checks or the payroll records of American Management. The Revenue Officer never spoke with Judith McAllister. The determination by the IRS that the Debtor was the "responsible person" thus liable for the 100% penalty pursuant to 26 U.S.C. § 6672 was based solely on the Debtor being an officer, director and stockholder of American Management and on the alleged confession and admission by the Debtor claimed to have been made at the highly questionable interview embellished by the subjective, unsubstantiated opinion of the Revenue Officer.
26 U.S.C. § 6671 imposes a penalty for non-payment of what is commonly referred to as "trust fund taxes." 26 U.S.C. § 6672(a) provides:
any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 . . . for any offense to which this section is applicable.
26 U.S.C. § 6672(a)(1944).
Obviously, the initial inquiry must be directed to the question whether or not the individual who sought to be assessed the 100% penalty was the "responsible person." Although this phrase does not appear in the Internal Revenue Code, courts uniformly recognize the concept. See United States v. Rem, 38 F.3d 634, 642 (2d Cir.1994); Raba v. United States, 977 F.2d 941, 943 (5th Cir. 1992); Thomsen v. United States, 887 F.2d 12, 16 (1st Cir.1989); Gustin v. United States, 876 F.2d 485, 491-92 (5th Cir.1989). Courts have often expressed the principle that "responsibility is a matter of status, duty and authority, not knowledge." George v. United States, 819 F.2d 1008 (11th Cir. 1987) quoting Mazo v. United States, 591 F.2d 1151, 1153 (5th Cir.1979). "Thus, a person may be a responsible person for purposes of the statute even though he does not know that withholding taxes have not been paid." Barnett v. I.R.S., 988 F.2d 1449, 1454 (5th Cir.1993) citing Mazo, supra at 1156. However, to impose the penalty the conduct must be a willful failure to collect and pay the taxes.
In the case of George, supra, the individual, a 50% shareholder, vice president and director of a corporation, failed to pay the trust fund monies withheld over to the IRS Based on these facts, the Court had no difficulty concluding that he was a responsible person. The fact that there was another 50% shareholder in the corporation did not detract from the debtor's duty as an officer, director and shareholder to insure that the withheld taxes be paid to the government.
It should be noted that even if the individual is found to be a responsible person, it appears from the case law that willfulness is a crucial factor. The taxpayers prevailed on the issue of willfulness in Levy v. United States, 140 F.Supp. 834 (W.D.La.1956), and also in George, supra. In Levy, the court stated. ". . . the term `willfully' has been interpreted to mean, correctly we think, `consciously,' `intentionally,' `deliberately,' `voluntary as distinguished from accidental.'" Levy, Id. at 836 (citations omitted). The court concluded that mere negligence in failing to ascertain the facts is not enough to render the person liable for the penalty.
In the present instance it is clear that Mr. Macagnone was the principal in the corporation, a 50% stockholder and a director and applying the "responsible person" test, he might very well be determined to be a responsible person. see George, supra; Caterino v. United States, 794 F.2d 1, 6 (1st Cir.1986); Roth v. United States, 779 F.2d 1567, 1571 (11th Cir.1986). Mr. Macagnone held a corporate office, he had technical authority to disburse corporate funds, he owned stock in the corporation. It is clear that *217 technically Mr. Macagnone did actually oversee the financial affairs of American Management, although he claims not to have exercised it. He also as president did have, no doubt, the ability to hire and fire employees.
While the Revenue Officer's report and recommendation is flawed in many respects, under the undisputed facts in this case the duty to assure that the payroll taxes are paid being a non-delegable duty, would clearly render the Debtor as the "responsible person" within the Statute.
This leaves for consideration the issue of willfulness.
This Court had occasion to consider the identical question in the case of In re Amici, 177 B.R. 386 (Bankr.M.D.Fla.1994), rev'd on other grounds, 197 B.R. 696 (M.D.Fla.1996). In Amici, the Court noted "a responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over the withheld tax." Mazo v. United States, 591 F.2d 1151 (5th Cir.1979). "[R]esponsibility is a matter of status, duty and authority, not knowledge." Id. at 1156. The courts have generally taken a broad view construing the term "responsible person." Slodov v. United States, 436 U.S. 238, 246, 98 S.Ct. at 1778, 56 L.Ed.2d 251 (1978); Liddon v. United States, 448 F.2d 509 (5th Cir.1971). More specifically, the Eleventh Circuit in Thibodeau v. United States, 828 F.2d 1499 (11th Cir.1987), held that the "indicia of responsibility" includes: the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees.
As noted earlier, the Debtor also denies having ever spoke to the Revenue Officer. The Statement is concluded with the comment, "willfulness and responsibility cannot be disputed." This, of course, is not a fact, but the subjective, unsubstantiated viewpoint of the Revenue Officer. This record is devoid of any hard evidence to warrant the conclusion that the omission under consideration was willful or that it was a conscious decision knowingly not to pay the taxes.
The Eleventh Circuit Court of Appeals addressed this issue in In re Haas, 48 F.3d 1153 (11th Cir.1995). Haas involved a challenge to the dischargeability of the debtor's income tax obligations. The Eleventh Circuit speaking through Judge Birch, held that the debtor's knowing failure to pay the taxes, without more, did not constitute a "willful attempt in any manner to evade or defeat such tax" such as would warrant excepting tax liability from discharge. Id. at 1158. In Haas the debtor acknowledged that he was in debt to the IRS but elected to use his income to pay personal and business expenses rather than pay the taxes due. Under these facts the Bankruptcy Court, concluded that his failure to pay the taxes was not the result of willful conduct designed to evade or defeat his taxes under 11 U.S.C. § 523(a)(1)(C). Instead it was the result of mistaking the priority and importance of certain financial obligations.
In the present instance there is evidence that Mr. Macagnone used corporate funds for his own personal use. There is also evidence that he took no salary, compensation or bonus during the relevant time. Considering the totality of the evidence in this record, this Court is satisfied that the failure of American Management was not due to the willful, conscious decision of this Debtor. Although under the principles outlined earlier, he was a responsible person, the IRS failed to establish the second prong, willfulness, which is a condition for the assessment of the 100% penalty. Therefore, Mr. Macagnone is not subject to the 100% penalty assessment under 26 U.S.C. § 6672.
In light of the foregoing, it is unnecessary to determine or consider whether this obligation is within the exception to discharge of 11 U.S.C. § 523(a)(1)(C).

UNPAID TAX LIABILITY FOR TAX YEAR 1982
Clearly the unpaid income taxes for tax year 1982 are "stale" taxes. Thus, Mr. Macagnone is protected by the general bankruptcy discharge unless this Court finds that he consented to an extension which, in turn, made the assessment for these taxes timely. The IRS has not been able to produce *218 any documents indicating that the Debtor consented to an extension. Rather, the IRS presented into evidence an unexplained, unreadable computer printout and never presented testimony from a proper person competent to testify to the alleged missing document allegedly giving consent to the extension. The IRS relies solely on the fact that the Debtor did consent to an extension concerning 1980 and 1981. Thus, according to the IRS, Mr. Macagnone also consented for 1982.
Clearly, Section 523 of the Bankruptcy Code should be liberally construed in favor of the Debtor and strictly against one who seeks to establish the exception. In the present instance the most that could be said viewing the evidence in the most charitable way is that the evidence is in equilibrium.
A separate final judgment will be entered by this Court in accordance with the foregoing.