# United States Tax Court

T.C. Memo. 2022-13

MOHAMMAD A. KAZMI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5013-18L.                    Filed March 1, 2022.

————

*Molly A. Recar*, for petitioner.

*Jay D. Adams* and *Sarah E. Sexton Martinez*, for respondent.

## MEMORANDUM OPINION

PARIS, *Judge*: This case is before the Court on a Petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated February 13, 2018 (notice of determination).[1] The notice of determination sustained a notice of federal tax lien (NFTL) filing (NFTL filing) with respect to trust fund recovery penalties (TFRPs) under section 6672. The TFRPs were assessed against petitioner for failing to collect and pay over employment taxes owed by Urgent Care Center, Inc. (Urgent Care), for taxable quarters ending June 30 and September 30, 2014 (periods at

————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] issue), resulting in outstanding liabilities of $6,184.23 and $4,190.77, respectively.[2]

The issues for decision are: (1) whether petitioner is entitled to challenge the underlying liabilities, and if so, whether he is a responsible person who willfully failed to pay over employment taxes under section 6672, and (2) whether the settlement officer in the Internal Revenue Service (IRS) Office of Appeals (Appeals) abused his discretion in sustaining the collection action.

Petitioner argues that he may challenge his underlying liabilities because a Letter 1153, Proposed Trust Fund Recovery Penalty, does not constitute a prior opportunity under section 6330(c)(2)(B) since the Commissioner's denial of a Letter 1153 appeal does not result in an opportunity for the taxpayer to seek judicial review before the Tax Court. Petitioner further argues that he is not a responsible person liable for TFRPs under section 6672, or—in essence—that the Commissioner has the wrong person.

The Commissioner argues that petitioner is prohibited from now challenging his underlying liabilities because he failed to appeal the earlier Letter 1153, which constituted an opportunity to dispute them under section 6330(c)(2)(B). The Commissioner further argues that the Court should therefore apply an abuse of discretion standard and hold that the Commissioner did not abuse his discretion.

The Court will hold for the Commissioner. This Court has consistently held that a properly served and received Letter 1153 constitutes a prior opportunity to challenge the underlying liability and therefore a failure to appeal it prohibits the same challenge at a collection due process hearing (CDP hearing). In addition, the Court will hold the Commissioner did not abuse his discretion in sustaining the NFTL filing with respect to the periods at issue.

---

[2] The notice of determination and pleadings also include a TFRP for the tax period ending December 31, 2014. Contemporaneous with this collection due process hearing request, petitioner also pursued relief through Collections. Petitioner submitted Form 843, Claim for Refund and Request for Abatement, filed September 26, 2016. The case activity record reflects that Form 843 was submitted after the NFTL filing in July 2016 but before the CDP hearing in January 2018. The administrative record includes the transcript for December 31, 2014, which reflects that the TFRP was abated in full December 2, 2016. The tax period ending December 31, 2014, is therefore moot and was dismissed by separate order.

[*3]                              *Background*

The parties submitted this case for decision without trial under Rule 122. Relevant facts have been stipulated or are otherwise included in the record. *See* Rule 122(a). Petitioner, Mohammad A. Kazmi, resided in Illinois when he timely filed his petition.

I.      *The Corporation*

Urgent Care is an Illinois corporation taxed under federal law as an S corporation. Urgent Care did not pay the employment taxes reported on its Forms 941, Employer's Quarterly Federal Tax Return, for the periods at issue. The sole owner of Urgent Care is Aref Senno, M.D. Dr. Senno, who is not a party to this case, was also the sole officer, director, and manager of Urgent Care.

II.     *Petitioner's Involvement with the Corporation*

Mr. Kazmi was employed by Urgent Care as a part-time hourly bookkeeper during the periods at issue. He had no ownership interest in Urgent Care. He was not an officer of Urgent Care. His name was not on any of Urgent Care's bank accounts. He did not have check signing authority for Urgent Care nor any authority to make payments on behalf of Urgent Care. At all times, he worked under the authority and direction of Dr. Senno.

The record includes Form 4180, Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes. The form reflects Mr. Kazmi as the person interviewed and includes his signature dated October 20, 2015. In section 1, block 8 of the form, Mr. Kazmi described his job title as "bookkeeper" and his duties as "to take care of payroll." In section 2, block 1 of the form, he indicated that he did not determine financial policy for Urgent Care, that he did not authorize payments of bills or creditors, and that he did not authorize payroll. He did indicate that he was authorized to transmit payroll tax returns and make federal tax deposits and that he was aware that withheld taxes had not been remitted.

The record also includes Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment. The form was filled out by the revenue officer and contains his signature as well as his supervisor's signature. Both signatures are dated December 16, 2015. The revenue officer recommended that Mr. Kazmi be assessed a TFRP because he

**[*4]** was "one of the corporation's bookkeepers and current [power of attorney], [who] has been granted the status, duty, authority and power to direct the collecting, accounting, and paying of trust fund/employment taxes." It further states that as power of attorney, he was "responsible for opening/responding to all IRS correspondence and contacts." It describes his duties as "reviewing expenses, bills, and discussing/arranging payment to creditors along with other bookkeepers" and that "[t]hese decisions are often made independently without the involvement of the corporate President."

Unable to collect the full tax liability from Urgent Care, the Commissioner determined that Mr. Kazmi was a jointly and severally liable[3] responsible person and proposed assessing TFRPs against him in a Letter 1153 dated December 16, 2015. Mr. Kazmi does not dispute receiving the Letter 1153 or signing the accompanying PS Form 3811, Domestic Return Receipt.[4] A taxpayer has 60 days to challenge a Letter 1153 by submitting a written appeal, but Mr. Kazmi made no appeal. The Commissioner then timely assessed TFRPs against Mr. Kazmi on March 22, 2016.

III.     *Collection Due Process*

On July 19, 2016, the Commissioner issued Mr. Kazmi a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. sec. 6320. This time, Mr. Kazmi sought to challenge the NFTL filing by submitting Form 12153, Request for a Collection Due Process or Equivalent Hearing. The Form 12153 challenged the underlying liabilities but neither requested collection alternatives nor made other challenges to the appropriateness of the collection action.[5]

---

[3] Dr. Senno was also determined a responsible person. *See infra* Discussion Part I and note 10.

[4] The Court accepts the parties' stipulation that Mr. Kazmi received the Letter 1153 on January 8, 2016, despite the certified mail receipt bearing a seemingly impossible date stamp of January 8, 2015. The Court presumes without deciding that the discrepancy is attributable to clerical error on the part of the U.S. Postal Service.

[5] The notice of determination states that Mr. Kazmi's Form 12153 indicated "[a]batement of the [TFRP] . . . as a collection alternative." First, Mr. Kazmi did not check any boxes on his Form 12153 for "Collection Alternative" (those alternatives being an installment agreement, offer-in-compromise, or inability to pay). Second, it is not apparent on the face of the Form 12153 that Mr. Kazmi requested abatement. Ultimately, the confusion is irrelevant since the outcome of this case does not depend on whether Mr. Kazmi's Form 12153 requested abatement for the periods at issue. *See infra* Discussion Part VI.A.

[*5] The Commissioner received Mr. Kazmi's Form 12153 on August 22, 2016.

Attached to the Form 12153 and included in the administrative record is a letter dated August 15, 2016, from Dr. Senno describing the situation with Mr. Kazmi as follows: Mr. Kazmi, as "a part time bookkeeper is not responsible for collection or accounting or making payments for any tax obligation for the corporation. His duty is to perform whatever task is given to him by me. He is not authorized to sign any check or documents on behalf of the company. Hence, I request you to have his name removed as a person for any tax obligation for Urgent Care Center Inc. By the way, I have an installment payment agreement of $450.00 per month with IRS for [Urgent Care]."

Mr. Kazmi's request for a CDP hearing was assigned to a settlement officer in Appeals. On December 21, 2017, the settlement officer sent Mr. Kazmi Letter 4837, Substantive Contact Letter, which scheduled a CDP hearing for January 23, 2018, and requested that he provide certain information, including a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employment Individuals.

Before the CDP hearing, the settlement officer verified that the requirements of applicable laws and administrative procedure had been met, including the proper issuance of the Letter 1153, notice and demand, the NFTL filing, and the notice of a right to a CDP hearing. The settlement officer further determined that Mr. Kazmi was prohibited from challenging the underlying liabilities in a CDP hearing because the Letter 1153 provided him with a prior opportunity to contest his underlying liabilities of which he failed to take advantage.

Mr. Kazmi did not answer when the settlement officer telephoned on January 23, 2018, so the settlement officer sent Letter 4000, Substantive Contact Letter, giving him 14 days to provide any additional information for his case. He telephoned the settlement officer on January 26, 2018. They discussed his underlying liabilities[6] (namely,

---

[6] "A taxpayer's underlying tax liability includes all 'amounts a taxpayer owes pursuant to the tax laws that are subject of the Commissioner's collection activities.'" *McNeill v. Commissioner*, 148 T.C. 481, 488 n.10 (2017) (quoting *Callahan v. Commissioner*, 130 T.C. 44, 49 (2008)); *see Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000) ("Although the term 'underlying tax liability' is defined in neither sections 6320 and 6330 nor the legislative history, Congress' intent in ensuring due process to

[*6] his position that he was neither a responsible person nor willful in failing to remit payroll taxes). He again stated that he did not wish to pursue collection alternatives. And he never provided Form 433-A or any additional financial information relative to a collection alternative or other challenge to the appropriateness of the collection action.

The settlement officer sustained the NFTL in the notice of determination dated February 13, 2018, and Mr. Kazmi timely petitioned this Court for redetermination.

## *Discussion*

### I. *Section 6672 TFRPs*

Employers have a duty to withhold or collect from an employee's wages the employee's share of federal tax[7] and then must pay over the withheld amounts to the Federal Government. *Dixon v. Commissioner*, T.C. Memo. 2019-79, at *16 (citing *Jarrett v. Commissioner*, T.C. Memo. 2018-73, at *31). Such withheld amounts are known as "trust fund taxes," *Jarrett*, T.C. Memo. 2018-73, at *31 (citing *Pollock v. Commissioner*, 132 T.C. 21, 25 n.10 (2009)), because they are "held to be a special fund in trust for the United States," § 7501(a).

When net wages are paid to an employee and the employer does not pay over the withheld funds, the Commissioner has no recourse against the employee. *Cashaw v. Commissioner*, T.C. Memo. 2021-123, at *9 (citing *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir. 1979)). For this reason, section 6672 provides a collection tool allowing the Commissioner to impose a TFRP on certain persons who fail to withhold and pay over trust fund taxes. *See Newsome v. United States*, 431 F.2d 742, 745 (5th Cir. 1970). The TFRP under this section is equal to the total amount of the tax not paid over. *Mazo*, 591 F.2d at 1154. The TFRP must be paid upon notice and demand by the Commissioner and shall be assessed and collected in the same manner as taxes. § 6671(a). The TFRP is known as an "assessable penalty" because the Commissioner

---

taxpayers when the Commissioner seeks to collect taxes by liens or levies suggests that the term includes any amounts owed that are the subject of the Commissioner's collection activities." (quoting H.R. Rep. No. 105-599, at 263–67 (1998) (Conf. Rep.))).

[7] These include the employee's share of (1) Social Security tax, *see* §§ 3101(a), 3102(a), (2) Medicare tax, *see* §§ 3101(b), 3102(a), and (3) federal income tax, *see* §§ 3402(a)(1), 3403.

**[\*7]** can assess[8] the TFRP against a taxpayer without first having to issue the taxpayer a notice of deficiency. *See generally Smith v. Commissioner*, 133 T.C. 424, 428–30 (2009) (providing an overview of assessable penalties); *Williams v. Commissioner*, 131 T.C. 54, 58 n.4 (2008) (noting that assessable penalties fall outside of the deficiency notice regime of sections 6212 to 6214 and thus fall outside this Court's deficiency jurisdiction). The assessable penalty was approved on December 16, 2015, by the group manager on Form 4183. *See Blackburn v. Commissioner*, 150 T.C. 218, 223 (2018).

Section 6672(a) imposes the TFRP on (1) "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" who (2) "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof."

The term "person" includes an officer or employee of a corporation who is under a duty to collect, account for, and pay over the tax. § 6671(b). Such persons are referred to as "responsible,"[9] and the term may be applied broadly. *Mason v. Commissioner*, 132 T.C. 301, 321 (2009) (citing *Logal v. United States*, 195 F.3d 229, 232 (5th Cir. 1999), and *Barnett v. IRS*, 988 F.2d 1449, 1454 (5th Cir. 1993)). Whether someone is a responsible person is "a matter of status, duty and authority, not knowledge." *Mazo*, 591 F.2d at 1156.

The U.S. Court of Appeals for the Seventh Circuit, the court to which an appeal of this case would presumably lie absent a stipulation to the contrary, *see* § 7482(b); *Golsen v. Commissioner*, 54 T.C. 742, 757

---

[8] An "assessment" is "the formal recording of a taxpayer's tax liability" in the IRS's records. *Baltic v. Commissioner*, 129 T.C. 178, 183 (2007); *see also Hibbs v. Winn*, 542 U.S. 88, 100 (2004) ("An assessment is made 'by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.'" (quoting section 6203)); Treas. Reg. § 301.6203-1. It is "essentially a bookkeeping notation." *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976) ("The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls.").

[9] The IRS collects the trust fund liability only once. Consequently, the IRS cross-references payments against the trust fund liability of the employer and payments against the TFRPs of responsible persons. *See Weber v. Commissioner*, 138 T.C. 348, 358 (2012). In addition, for circumstances in which there is more than one responsible person, a taxpayer who paid the TFRP may bring a separate suit against the other responsible person(s) claiming a right of contribution. § 6672(d); *see Weber*, 138 T.C. at 358 n.8.

**[\*8]** (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), considers the following to be indicia of "responsible person" status: (1) holding corporate office, (2) owning stock in the company, (3) serving on the board of directors, (4) having authority to sign checks, and (5) having control over corporate financial affairs, *United States v. Kim*, 111 F.3d 1351, 1362–63 (7th Cir. 1997).

A responsible person will be held liable for a TFRP only where the failure to pay the withholding tax was willful. § 6672. "Willful" for this purpose does not mean the responsible person must have a "criminal or other bad motive . . . , but simply a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees." *Newsome*, 431 F.2d at 745. To establish willfulness, there is no requirement that the responsible person intended to deprive the Federal Government of the withholding tax. *Id.* at 747. Willfulness can exist where the "responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the [Federal] Government." *Mazo*, 591 F.2d at 1155. Willfulness is typically proven by evidence that a responsible person paid other creditors when withholding taxes were due to the Federal Government. *Gustin v. United States*, 876 F.2d 485, 492 (5th Cir. 1989).

Mr. Kazmi contends that he is not liable for a TFRP because he was not a responsible person who willfully failed to pay over the withheld taxes for any of the periods at issue. Because the underlying tax liability of a TFRP is the penalty itself, the Court must first decide whether Mr. Kazmi is entitled to challenge his underlying liabilities before reaching the merits of his contention. *See* cases cited *supra* note 6.

II.    *Section 6320*

Before imposing a TFRP under section 6672, the IRS must properly notify the responsible person and properly assess the penalty against that person. In order to properly assess, the Commissioner must generally notify the taxpayer in writing by mail to the taxpayer's last known address advising that the person will be subject to an assessment of the TFRP. §§ 6672(b)(1), 6212(b); *Mason*, 132 T.C. at 322. Letter 1153 satisfies this preliminary notice requirement. *See Mason*, 132 T.C. at 317–18, 322.

The Commissioner may not assess a TFRP for at least 90 days after providing the notice (in this case, Letter 1153). § 6672(b)(3). Within

[*9] those 90 days, the taxpayer may challenge the notice by requesting an administrative hearing before Appeals. § 6672(b)(3)(A).

If the responsible person fails to pay the TFRP after notice and demand, the amount becomes a lien in favor of the United States upon that person's property and rights to property. § 6321. The IRS may then file an NFTL to protect the priority of the lien against certain third parties. § 6323. Once the IRS files an NFTL, it must notify the person of the filing and of the person's right to a CDP hearing to appeal the NFTL filing. § 6320(a) and (b).

III.    *Jurisdiction and Burden of Proof*

Sections 6320(c) and 6330(d)(1) grant this Court jurisdiction to review the Commissioner's determination that a proposed collection action was proper. *Williams*, 131 T.C. at 58 n.4; *Callahan*, 130 T.C. at 48. Taxpayers who challenge their underlying tax liabilities in cases arising under section 6320 or 6330 bear the burden of proof regarding their correct tax liabilities. *See* Rule 142(a); *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013).

IV.    *Standard of Review*

In general, a taxpayer must raise an issue at a CDP hearing to preserve it for this Court's review. *Perkins v. Commissioner*, 129 T.C. 58, 63 (2007); *Magana v. Commissioner*, 118 T.C. 488, 493 (2002); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3. In reviewing a determination under section 6330(c)(2), the Court considers only issues that the taxpayer properly raised during the CDP hearing. Treas. Reg. §§ 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3; *see Giamelli v. Commissioner*, 129 T.C. 107, 115 (2007). Therefore, "[a] taxpayer is precluded from disputing the underlying liability [in this Court] if it was not properly raised in the CDP hearing." *Thompson*, 140 T.C. at 178. A taxpayer during a CDP hearing does not properly raise an issue, including an issue concerning his underlying tax liability, if he "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Treas. Reg. § 301.6320-1(f)(2), Q&A-F3; *see Pough v. Commissioner*, 135 T.C. 344, 349 (2010). The taxpayer must also raise the issue in his petition to this Court. Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

A taxpayer cannot challenge an underlying liability in a CDP hearing, and this Court cannot review that liability, if the taxpayer had

[*10] an earlier opportunity to dispute the assessment of that liability. § 6330(c)(2)(B); *Mason*, 132 T.C. at 317.

Where a taxpayer's underlying tax liability is properly at issue before this Court, the Court reviews the Commissioner's determination regarding the underlying liability de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. *Id.*; *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). An abuse of discretion is any action that is arbitrary, capricious, or without sound basis in law or fact. *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

V.    *Underlying Liabilities*

The liabilities in this case involve TFRPs. Before TFRPs can be assessed, the Commissioner must generally notify the taxpayer in writing by mail to the taxpayer's last known address advising that TFRPs will be assessed. § 6672(b)(1); *Mason*, 132 T.C. at 322. Letter 1153 satisfies this preliminary notice requirement. *See Mason*, 132 T.C. at 317–18, 322.

The Commissioner issued Mr. Kazmi a Letter 1153. Mr. Kazmi does not dispute receiving Letter 1153 or signing the accompanying PS Form 3811, Domestic Return Receipt.[10] The Letter 1153 satisfied the notice requirement of section 6672. *See id.* The assessment of the TFRPs against Mr. Kazmi was thus valid. The Court may therefore consider the merits of that assessment—i.e., the underlying liabilities—provided that Mr. Kazmi was not statutorily precluded from raising them during his CDP hearing.

A Letter 1153 also provides a taxpayer with an administrative means for protesting a proposed assessment of TFRPs. In the specific context of CDP cases involving TFRPs, this Court has held that, for purposes of section 6330(c)(2)(B), a taxpayer has an "opportunity" to dispute his underlying tax liability for a TFRP when he receives Letter 1153. *See Mason*, 132 T.C. at 317–18. Thus, if the taxpayer receives Letter 1153 but fails to challenge the underlying tax liability at the Appeals conference, then the taxpayer is precluded by section 6330(c)(2)(B) from challenging the underlying tax liability in a

---

[10] A Letter 1153 that is neither received nor deliberately refused by a taxpayer does not constitute an opportunity to dispute the taxpayer's liability. *See Mason*, 132 T.C. at 318; *Fitzpatrick v. Commissioner*, T.C. Memo. 2016-199, at *18.

**[\*11]** subsequent CDP hearing. This is the circumstance in which Mr. Kazmi now finds himself.

Mr. Kazmi does not dispute that he failed to challenge the Letter 1153. Instead, he asks this Court to overturn its previous holdings that Letter 1153 constitutes a prior opportunity. His argument is that Letter 1153 does not provide a prior opportunity under section 6330(c)(2)(B) because the Commissioner's denial of a Letter 1153 appeal does not result in an opportunity for the taxpayer to seek judicial review before the Tax Court.

Mr. Kazmi is correct to the extent that, if a taxpayer appeals Letter 1153 and the Commissioner denies the appeal, the taxpayer cannot at that stage challenge the denial of the appeal in the Tax Court. This is so because the Tax Court is a Court of limited jurisdiction. *See* § 7442; *Burns, Stix Friedman & Co. v. Commissioner*, 57 T.C. 392, 396 (1971). It has only the jurisdiction which is conferred on it by statute. *Burns, Stix Friedman & Co.*, 57 T.C. at 396; *see also* § 7442. But the Tax Court's lack of jurisdiction does not necessarily mean that a taxpayer lacks any opportunity for judicial review.

This Court addressed an argument similar to Mr. Kazmi's in *Bishay v. Commissioner*, T.C. Memo. 2015-105, *aff'd without published opinion*, 2017 WL 11453028 (1st Cir. 2017). In that case, the Court noted that

> [t]he lack of opportunity for judicial review after the Letter 1153 proceeding does not severely prejudice the taxpayer because, as we have previously noted, "the section 6672 penalty is divisible, so that a taxpayer may litigate the penalty after having paid an amount corresponding to the tax withheld from a single employee". *See Weber v. Commissioner*, 138 T.C. 348, 363 n.12 (2012) (citing *Davis v. United States*, 961 F.2d 867, 870 n.2 (9th Cir. 1992), and *Bland v. Commissioner*, T.C. Memo. 2012-84). Thus, the taxpayer whose liability is upheld in the Letter 1153 proceeding can make a small "token" payment towards the section 6672 penalty, file a refund claim with the IRS, and, if the refund claim is denied, file a refund suit in the Federal District Court or the Court of Federal Claims.

*Bishay*, T.C. Memo. 2015-105, at \*17 n.9.

**[\*12]** At this time, the Court declines to overturn its previous holdings that a properly mailed and received Letter 1153 constitutes a prior opportunity. Mr. Kazmi's failure to challenge the Letter 1153 thus precluded him from challenging his underlying liabilities in the CDP hearing, and the Court will review for abuse of discretion the Commissioner's determination to sustain the NFTL filing.

VI.     *Abuse of Discretion*

A.     *In General*

In reviewing for abuse of discretion the Court must uphold the settlement officer's determination unless it is arbitrary, capricious, or without sound basis in law or fact. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006); *see also Keller v. Commissioner*, 568 F.3d 710, 716–18 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases. The Court does not conduct an independent review or substitute its own judgment for that of the settlement officer. *Murphy*, 125 T.C. at 320.

At the agency-level CDP hearing, the settlement officer must determine whether the proposed collection action may proceed. The procedures for the agency-level hearing regarding an NFTL are similar to those set forth in section 6330(c) for a notice of intent to levy. § 6320(c).

First, the settlement officer must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. § 6330(c)(3)(A). The attachment to the notice of determination summarized the settlement officer's compliance with these requirements.[11] However, the Court construes Mr. Kazmi's contention that the Commissioner has the wrong person as an argument that not all requirements of applicable law were met and addresses it *infra* Discussion Part VI.B.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the [collection action], including" challenges

---

[11] Mr. Kazmi has not raised whether the settlement officer failed to obtain verification of compliance with the supervisory approval requirement under section 6751(b). In any event the Form 4183 in the administrative record reflects the settlement officer's verification of supervisory approval. *See Blackburn*, 150 T.C. at 223.

**[\*13]** to the appropriateness of the collection action and collection alternatives such as an installment agreement or an offer-in-compromise.[12] § 6330(c)(2)(A). Mr. Kazmi declined to propose any collection alternatives before or during his CDP hearing. It is not an abuse of discretion for a settlement officer to sustain a collection action and not consider collection alternatives where the taxpayer has proposed none. *See McLaine v. Commissioner*, 138 T.C. 228, 242–43 (2012); *Kendricks v. Commissioner*, 124 T.C. 69, 79 (2005); *see also* Treas. Reg. § 301.7122-1(d)(1) (requiring that offers to compromise a tax liability must be made in writing and include all the information prescribed or requested by the IRS).

Third, the taxpayer may contest the existence and amount of the underlying liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. § 6330(c)(2)(B). As the Court discussed *supra*, Mr. Kazmi could not contest his underlying liabilities in the CDP hearing because he received but did not challenge the Letter 1153, which provided him with a prior opportunity. In such a case the primary purpose of the CDP hearing was for Mr. Kazmi and the settlement officer to discuss collection alternatives. *See Bishay*, T.C. Memo. 2015-105, at \*17.

Fourth, the settlement officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3)(C). Mr. Kazmi does not argue this point. Moreover, the actions sustained by the settlement officer's determination—i.e., the filing of an NFTL, rather than issuing a notice of intent to levy—was among the less intrusive collection methods available to the IRS. The IRS was only preserving its place in Mr. Kazmi's line of creditors. The IRS chose the least intrusive collection method and did not abuse its discretion in doing so.

B. *Verification of Responsible Person*

To Mr. Kazmi, it seems clear that the Commissioner has the wrong person because he was merely a part-time bookkeeper. He was not an officer or director of the company. He had no ownership stake in the company. He had no authority to sign checks. As Urgent Care's sole

---

[12] For a review of various grounds for compromise, see Treasury Regulation § 301.7122-1(b) and T.D. 9007, 2002-2 C.B. 250. For an overview of the legislative history surrounding compromises, see generally H.R. Rep. No. 105-599, at 289 (1998) (Conf. Rep.), and T.D. 8829, 1999-2 C.B. 235.

[*14] owner wrote, Mr. Kazmi's sole duty was "to perform whatever task is given to him."

The Court construes Mr. Kazmi's contention that he is not a responsible person to whom the TFRP should be applied as an argument that the law requires the Commissioner to determine whether someone is a responsible person to whom the TFRP applies as a condition precedent to the issuance of a Letter 1153, that Mr. Kazmi met none of the indicia of responsible person status, and that the settlement officer must have acted arbitrarily when he verified that the requirements of applicable law had been met.

The term "responsible person" is derived from the mandate in section 6672(a) that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" shall be liable for the TFRP. Congress added section 6672(b)(1) to the Code in 1996 as part of The Taxpayer Bill of Rights 2, Pub. L. No. 104-168, § 901, 110 Stat. 1452, 1465. That section requires that "[n]o [TFRP] shall be imposed . . . unless the Secretary notifies the taxpayer in writing . . . that the taxpayer shall be subject to an assessment of such penalty." § 6672(b)(1). In other words, it requires that once the Commissioner determines someone is a responsible person subject to the TFRP, he must provide that person with notice (i.e., Letter 1153) before assessing the TFRP.

The record indicates that the settlement officer complied with procedural requirements and gave due consideration to Mr. Kazmi's case. Before the issuance of the Letter 1153, the settlement officer verified that a determination had been made that Mr. Kazmi was a responsible person to whom the TFRP applied and that the penalty had received supervisory approval. *See Blackburn*, 150 T.C. at 223. The settlement officer also verified that the Letter 1153 was sent by certified mail and received by Mr. Kazmi. As the Court stated *supra* p. 12, in reviewing for abuse of discretion, it does not substitute its own judgment for that of the settlement officer. A difference of reasonable minds does not rise to the level of arbitrariness required for finding an abuse of discretion.

VII.   *Conclusion*

In view of the foregoing, the Court sustains the notice of determination for the NFTL filing for taxable quarters ending June 30 and September 30, 2014.

**[\*15]** The Court has considered all arguments by the parties and, to the extent not specifically mentioned above, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*